93   415
101   68

## Wytheville.

### ANDERSON v. PHLEGAR, TRUSTEE, & OTHERS.

#### JULY 16, 1896.

#### Absent, Harrison, J.

1. ESTOPPEL—*Recital in deed—Representations.*—A grantor in a deed, re-
leasing an existing lien on land in favor of a debt to be secured by a
deed of trust thereon, who recites in his deed of release that his
mother has become the purchaser of a life estate in the land, and
that he has acquired a lien on such life estate by virtue of having
paid a part of the purchase money therefor as surety for his mother,
is estopped by the recital of his deed from asserting, as against the
trust creditor, that he, and not his mother, was the purchaser of said
life estate. It is immaterial that the records would show who
the purchaser was. Having represented that his mother was the
purchaser, and his representations having been acted on by the trust
creditor, it must be taken as true.

2. INJUNCTIONS—*Dissolution—Discretion as to retaining case.*—Upon the
dissolution of an injunction to a sale under a deed of trust, it is
within the discretion of the court either to dismiss the bill, or retain
it for the purpose of administering the trust. If there are conflicting
interests between the parties as to their respective rights and inter-
ests they should be decided, and a decree made for the sale of the
property and the proper application of the proceeds. But whether
the discretion vested in the court has been soundly exercised or not
depends upon the facts and circumstances of the particular case.

Appeal from a decree of the Circuit Court of Montgomery
county, pronounced May 1, 1894, in a suit in chancery
wherein the appellant was the complainant, and the ap-
pellees were the defendants.

*Reversed.*

*Scott & Staples,* for the appellant.

*Phlegar & Johnson,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

The facts out of which this litigation arose are as follows:: On the 10th of March, 1884, Mrs. S. J. Anderson, the wife of Geo. W. Anderson, owned the estate in remainder in a. tract of about 1,100 acres of land in Montgomery county,. subject to the life estate of her husband therein, the title to which life estate was then outstanding in the assignee in bankruptcy of the husband, and on that date Anderson and wife, by deed duly recorded, conveyed the wife's estate in remainder to Scott and Marye, trustees, to secure to Robert Stiles the payment of $2,000. On December 31, 1888, Stiles assigned his debt and the trust deed securing it to the appellant, Wm. G. Anderson. In March, 1890, Mrs. S. J. Anderson became desirous of borrowing from Lewis H. Blair the sum of $1,500, or to secure the endorsement of her note by Blair to enable her to get the loan from the Bank of Christiansburg, proposing to secure Blair by trust deed on her interest in the 1,100-acre tract of land. But before endorsing the note Blair was informed that the appellant, Wm. G. Anderson, held the lien on the land for the debt of $2,000, formerly held by Stiles, and laid claim to some interest in the life estate of Geo. W. Anderson in the land, and refused to endorse the note for Mrs. Anderson until appellant, Wm. G.. Anderson, released his claims upon the land, or agreed to postpone them in favor of the deed of trust to be executed to secure him, Blair; whereupon Geo. W. Anderson and wife procured from Wm. G. Anderson the following deed, to-wit:

" Having as security of my mother, Sarah J. Anderson, on her bonds for purchase money of my father's life estate in about eleven hundred acres of land sold under a decree of the United States Court, said land being in Montgomery

county, Virginia, paid a part of said purchase money, and having also taken by transfer or assignment the debt of Robert W. Stiles, for two thousand dollars and interest, which was secured by a deed of trust dated March 10, 1884, recorded in deed-book Y at page 82 of Montgomery clerk's office, Virginia, and being requested by my mother and father to release the lien I have for said sums, in favor of a note for fifteen hundred dollars to bear date March 7, 1890, payable four months after date to Lewis H. Blair, which my father and mother propose giving and securing by a trust deed on said land, I do hereby covenant and agree with said Geo. W. Anderson (my father), Sarah I. Anderson, Lewis H. Blair, and all future holders of such note, or any note which may be given in renewal thereof, or any part thereof, that I will and I do hereby release the liens which I have on said land so far as the same are prior to the lien to be created by trust deed to secure the said $1,500 note, and all renewals thereof, and that the debts due me as aforesaid shall be subordinate to the lien for [the] fifteen hundred dollar note, for all costs and charges which may attend the collection, renewals, and discount of the same, or of any renewals in whole or part thereof, but this release and agreement shall not affect my claims as against any other debts of my father or mother.

Given under my hand and seal March 10th, 1890.

WM. G. ANDERSON, (Seal)."

This deed duly executed and acknowledged, having been delivered along with a deed of trust of the same date, executed by George W. Anderson and wife to Phlegar, trustee, conveying the 1,100-acre tract of land to secure "the payment of a negotiable note bearing date March 7, 1890, made by the grantor   *   *   *   payable to Lewis H. Blair four months after its date, at the First National Bank of Roanoke, Va., for $1,500, all renewals thereof, &c.   *   *   *   and

also to secure a bond of $100 payable four months after
date, on conditions therein expressed, to said Lewis H. Blair,
*  *  *  both deeds being recorded together. Blair endorsed
the $1,500 note, and Anderson and wife had it discounted at
the Bank of Christiansburg, and failed to meet it when due.
In 1894 Blair required the trustee, Phlegar, to sell the
property, and the trustee posted his notices of a sale of the
property, or so much thereof as might be necessary to pay
the debt secured and cost of executing the trust, on the 23rd
of April, 1894; the notice of sale setting forth that the land
had been laid off in parcels by the county surveyor since a
former advertisement, and into more desirable parcels; that
the sale would be for cash as to $1,900, and as to any residue
from the sale of the parcels sold a credit would be given of
one and two years, &c.   Before the day of sale the appellant,
William G. Anderson, obtained an injunction to restrain the
trustee from proceeding with the sale till the further order of
the Circuit Court of Montgomery county.   To the bill filed by
William G. Anderson, Blair, and Phlegar, trustee, filed their
separate demurrer and answer, to which answer the plaintiff
replied generally; and notice having been duly given of a
motion to dissolve the injunction in vacation, the cause was
heard before the judge of the Circuit Court of Montgomery
county May 1, 1894, upon the bill and exhibits therewith,
and separate answer of Blair, and Phlegar, trustee, read as
affidavits, and other affidavits read on behalf of both plaintiff
and defendants; whereupon the judge of the Circuit Court
dissolved the injunction, and, at the following term of the
court, dismissed the plaintiff's bill, and the plaintiff obtained
an appeal to this court.

   The first contention of appellant is that it was error in the
court below to dissolve the injunction and leave the trustee
to sell in accordance with the advertisement he had posted,
in view of the fact that he proposed to sell not only the
interest of Mrs. S. J. Anderson in the land, but the life

estate of her husband which had not passed by the deed of trust under which the trustee was acting, but the title to which life estate was, at the date of the execution of the trust, in the husband's, George W. Anderson's, assignee in bankruptcy, and subsequently conveyed to appellant by a commissioner of the bankrupt court. In other words, it is contended that appellant is not estopped by his deed of March 10, 1890, from setting up his claim to the life estate of George W. Anderson in the tract of land then about to be sold by the trustee, even as against or as having priority over the $1,500 debt secured to Blair.

It will be observed that the deed of appellant of March 10, 1890, recites that his claim to the life estate in question was based on his having, as security for his mother, Sarah J. Anderson, the purchaser thereof, paid a part of the purchase money therefor; that he had taken a transfer and assignment of the debt to Robert W. Stiles for $2,000 and interest secured by the trust deed of March 10, 1884, recorded, &c., and "being requested by my mother and father to release the *liens* I have for said *sums* in favor of a note to Blair for $1,500," &c. Then follows the agreement between him and his father and mother and Blair, in which he says: "I do hereby release the *liens* which I have on said land so far as the same are prior to the lien to be created by trust to secure the said $1,500, * * * * * *," and that the *debts* due me *as aforesaid* "shall be subordinate to the lien for said $1,500 note, and for all costs and charges which attend the collection, renewals, and discounts of same," &c.

Language could hardly be made plainer to convey to Blair the idea that the only claim that appellant had on the life estate of his father, Geo. W. Anderson, in the 1,100 acres of land was for the sums that he had paid therefor as surety for his mother, who had purchased the life estate, and who owned the estate in remainder, and that he, appellant, intended by his agreement to postpone this claim, as well as

the Stiles debt, in favor of the note for $1,500 to be executed by his mother and father to Blair. If the life estate had in fact been purchased by Mrs. Anderson, it would have passed under the deed made for Blair's benefit, and the question therefore is, did Blair rely on the recitals made in the deed of appellant of March 10, 1890, and was it his right to do so? Certain it is that appellant will not be heard to say that he did not read his deed, or that he did not understand it, nor that he was ignorant of the real facts when he made the deed, especially as he now makes it to appear, that at that time the life estate in the land had been sold under a decree of the bankrupt court, and that he had become the purchaser, though there was no decree authorizing a deed to him till March 13, 1893—it was not made till April 10, 1894, a few weeks only before he instituted this suit. It is argued, however, that it was within the power of Blair to ascertain from the proceedings in bankruptcy in which the life estate of Geo. W. Anderson was sold, the facts as to who was the purchaser of this life estate, but the doctrine underlying this contention only applies where the conduct affecting title to land and creating the alleged estoppel is mere silence. Where the real owner resorts to any affirmative acts or words, or makes any representations, it would be in the highest degree inequitable to permit him to say that the other party, who had relied upon his conduct, and had been misled thereby, might have ascertained the falsity of his representations. 2 Pom. Eq. J., sec. 810, and authorities cited. It is not the silence of appellant merely that is relied on to operate as an estoppel, but the representations made by him in the most solemn form. He who is silent when conscience requires him to speak shall be debarred from speaking when conscience requires him to be silent. *Nicholas* v. *Austin*, 82 Va. 825, and cases cited. It is, however, by his deed under his hand and seal that appellant is not only estopped from disputing the deed itself, but every

fact which he recites.   3 Wash. on Real Property (3 Ed) p. 93; 2 Pom. Eq. J., sec. 808.

The measure of the operation of an estoppel is the extent of the representation made by one party and acted on by the other.   The estoppel is commensurate with the thing represented, and operates to put the party entitled to its benefit in the same position as if the thing represented were true. 2 Pom. Eq. J., section 813 and cases cited.

In ascertaining whether or not Blair relied and acted on the representations made by appellant in his deed, the question might well be asked, what object had he in first requiring this deed from appellant before making the loan to Mrs. Anderson other than to obtain a first lien, a clear and unencumbered title to the land, as a security for the loan, and what other object could appellant have supposed he had in view?   It is not too much to assume that any one of fair business knowledge would know that an estate in remainder in land subject to a life estate, with the uncertainty of the time of possession, would be very undesirable security for a loan, and the most difficult estates usually to make sale of. Moreover, appellant does not allege in his bill that appellee, Blair, did not rely and act on the representations made by him, but argues only that Blair knew, or could have known from the bankruptcy proceedings, that the representations as to the ownership of the life estate were untrue; and further argues that the deed to Phlegar, trustee, did not convey the life estate in the land.

These contentions are fully met by the answer of Blair, and Phlegar, trustee, certainly so far as to refute any suggestion that the representations made by appellant were not relied on, or that they knew that they were false.   "A man to whom a particular and distinct representation has been made is entitled to rely on the representation, and need not make any further enquiry."   "No man can complain that another has relied too implicitly on what he himself stated."

*Brown* v. *Rice's Adm'r*, 26 Gratt. 473.    Some of the authorities go so far as to hold that even silence alone will make it needless to go to the record.    *Bates* v. *Swiger* (West Va.) 21 S. E. R. 874, and authorities cited.

We are of opinion, therefore, that the appellant is estopped from setting up any claim to the land conveyed to Phlegar, trustee, to the prejudice of the appellee, Blair, as to the amount due on the $1,500 note secured by the trust deed, and that there is no error in the decree appealed from in this respect.

It is, however, equally as clear that the $100-bond secured by this trust deed does not have priority over the right of appellant to the estate for the life of Geo. W. Anderson in the land conveyed, or as a lien thereon, nor over the debt assigned to appellant by Stiles, but that this $100-debt is a subordinate lien on the reversionary interest in the land, to the $1,500-debt, and the Stiles debt.    It is admitted, that this $100-bond is included in the $1,900 for which the trustee's notice of the sale stated that the land was to be sold, and this was at least misleading, and should have been corrected before the trustee was permitted to proceed with the sale.

This brings us to the only remaining question that need be considered, and that is, whether or not it was error in the court below to dissolve the injunction and dismiss the cause, instead of retaining it with the view of supervising the administration of the trust ?

It is true that, whether a court on dissolving an injunction to a sale under a trust deed, should dismiss the bill, or retain it with the view of supervising the administration of the trusts, lies within the discretion of the court.    *Hogan* v. *Duke et als*, 20 Gratt. 244; *Robinson* v. *May, Trustee*, 76 Va. 708; *Muller's Adm'r* v. *Stone*, 84 Va. 839.    But whether this discretion has been soundly exercised depends upon the facts and circumstances of the particular case.    There is no sug-

gestion in the record here that there are any other liens on the land than those mentioned in the bill and answers. Therefore there existed no good reason for an account of liens before a sale by the trustee, but there being a conflict between the parties to the cause as to their respective rights and interests, the court should have decided the issues between them, and then decreed a sale of the property and directed the application of the proceeds. *Muller's Adm'r* v. *Stone, supra.*

The decree appealed from is therefore reversed and annulled, and the cause is remanded for further proceedings herein in accordance with this opinion.

*Reversed.*