Syllabus.

# Richmond.

## THROCKMORTON V. THROCKMORTON AND OTHERS.

### JANUARY 25, 1895.

### Absent, Keith, P.*

1. RESULTING TRUST—*Parol Evidence.*—A resulting trust may be established by parol evidence, or even by circumstances, but the facts in all such cases must be proved with great clearness and certainty. Loose and equivocal expressions will not be allowed to control the evidence of deeds. The evidence must be full, clear, and explicit.

2. RESULTING TRUST—*Husband and Wife.*—A resulting trust will not be established in favor of a wife against her husband, where her case rests simply on the presumption arising from the receipt and possession of her money and property by him, and in the absence of proof that her estate was used in paying for property conveyed to him.

3. RESULTING TRUST—*Husband and Wife—Separate Estate.*—Where the wife permits her husband to receive her legal separate estate and use it as his own, with her full knowledge and acquiescence, without complaint on her part, and without exacting any promise of repayment or return, and thus enables him to contract debts on the faith and credit of it, the law does not imply a promise of repayment, but presumes a gift by the wife to the husband.

4. RECORD TITLE—*Purchaser—Resulting Trust.*—Where the record title of real estate is in the husband, and there is nothing to show or suggest any right or claim to it in the wife, and the husband executes a deed of trust on the land to secure creditors, the trustee and beneficiaries, in the absence of notice of any claim of the wife, stand as *bona fide* purchasers, for value, and will be protected against any claim of the wife to have a resulting trust declared in her favor.

5. MISTAKE OF LAW—*Married Women.*—A court of equity will not grant relief from a mistake of law. Ignorance of the law is no excuse, and this rule applies to married women with reference to their separate estates.

*Judge Keith had decided the case in the Circuit Court.

Appeal from a decree of the Circuit Court of Loudoun county, pronounced January 21, 1892, in a suit in chancery wherein the appellant was the complainant, and the appellee and others were the defendants.

*Affirmed.*

The opinion states the case.

*John M. Orr*, for the appellant.

*Edward Nichols*, and *Alexander & Tebbs*, for the appellee.

RIELY, J., delivered the opinion of the court.

This suit was brought in the Circuit Court of Loudoun county, in December, 1890, by the appellant, Annie E. Throckmorton, against her husband, Mason Throckmorton, from whom she had been recently divorced, and certain of his creditors holding deeds of trust on his land, to establish a resulting trust in her favor in his real and personal property. She based such right on the claim, that the proceeds of sale of the lands inherited by her from her parents, and moneys to which she was entitled, had been received by her husband and invested in the real and personal property possessed by him.

Upon the hearing of the cause she was denied the relief sought, and her bill dismissed.

It may be considered as settled law that a resulting trust may be established by parol evidence or even by circumstances, but the facts in all cases must be proved with great clearness and certainty. Loose and equivocal expressions will not be allowed to control the evidence of deeds. The evidence must be full, clear, and explicit. Perry on trusts, sec. 137; Pomeroy's Equity Jurisprudence, section 1040; *Dyer* v. *Dyer*, Leading Cases in Equity, Vol. I, Part I, 135; *Phelps* v. *Seely et als.*, 22 Gratt. 573; and *Miller et als.* v. *Blose's ex'or, et als.*, 30 Gratt. 744.

Guided by this rule, we will consider the evidence and circumstances relied on by the appellant to establish her claim.

She was married to Mason Throckmorton in November, 1874, and at that time owned in fee an undivided one-third part of a tract of land in Loudoun county, of 300 acres, which she had inherited from her father, Abner G. Humphrey. On the partition of this land, she received 133 acres, which was sold and conveyed in several parcels by her and her husband between the years 1878 and 1881, and the proceeds of sale, which aggregated $4,098.71, were received by her husband,

Her mother, Mary C. Humphrey, died in 1876, possessed of land and personalty, in which the share of the appellant amounted to $3,292.51, and this was likewise received by her husband.

Her grandfather, Joseph Lodge, died in June, 1877, and she received at different times under the legacy bequeathed by him to her mother, $2,291.48, which was also received by her husband. Her moneys so received by her husband, amounted altogether to the sum of $9,682.70, and came into his hands at different dates between the years 1878 and 1885.

Her husband at the time of her marriage had no estate of any kind. For the first two years after their marriage, they lived in his father's house. He then rented his father's farm for the next two years. At the expiration of that time his father conveyed it to him. He continued to live upon it and cultivate it thereafter, and, according to the evidence, was a successful farmer. When this suit was brought, he owned 389 acres of land in Loudoun county, assessed at $11,675, and personal property assessed at $2,355, making in all $14,030. On this land was a deed of trust, executed by Mason Throckmorton and his wife, Annie E. Throckmorton, on September 8, 1886, to secure a debt of $4,000, to Mary A. Mead, for money lent to him, and another deed of trust made by him on September 11, 1890, to secure a bond for $1,000, to Nathan T.

Brown, and also a bond for $850, to H. H. Russell, guardian of Ella Rogers, for moneys lent to him. From the report of Commissioner Wm. N. Wise, made under decree in the cause, it appears that Mason Throckmorton owed unsecured debts amounting to $12,201.17, thus making his indebtedness on December 15, 1890, $18,051.17, which exceeded the assessed value of his whole estate by several thousand dollars. This heavy indebtedness arose in great part from the expensive litigation which attended the suits for divorce between his wife and himself.

The appellant alleged in her bill that she consented to the sale of the land she inherited from her father upon the promise by her husband that he would use the proceeds of sale in the purchase of the farm of 319 acres and some lots, which belonged to his father and now constitute the principal part of the real estate owned by her husband, and his assurance that the property should be hers; that the other moneys which belonged to her and were received by him were invested in the residue of the 389 acres and the personal property possessed by him; that he had no other means with which to purchase the same, except the moneys and property belonging to her, and the income, interest, and profits thereof, all of which she charged was her legal separate estate under the married woman's act of April 4, 1877; and that he had never accounted to her for the property or moneys.

She produced no evidence to sustain the allegations of her bill in respect to these matters beyond the receipt and possession by her husband of her property and moneys, and he only admitted in his answer to her bill that some of her moneys, mingled with his own, might have been used in paying for some of the personal property. While, on the contrary, it was shown that the father of Mason Throckmorton conveyed to him the farm of 319 acres and the lots referred to on January 27, 1879, for the consideration of $1,000, and his agree-

ment to pay certain debts of his father, aggregating between $8,000, and $10,000, which were secured on the land by deed of trust. The realty, so conveyed to him by his father, was proved to be worth some five or six thousand dollars more than the debts. These debts had been assigned to Eliza J. Throckmorton, the mother of Mason Throckmorton, in part of her share of the estate of her father, Mason Chamblin, and were her property. Mason Throckmorton did not pay these debts, and when he desired to obtain the loan of $4,000, from Mary A. Mead, she required the deed of trust securing them to be released so as to give her the first lien on the land. This was accordingly done. Mason Throckmorton then executed his bond to his mother for the amount of her said debts, and subsequently confessed judgment on the bond in her favor. So that the charge in the bill that the money of the appellant was used in buying the said farm was clearly refuted.

There was also a failure to show that any of the estate of the appellant was used in paying for the Adler land, aggregating seventy acres, and which comprises the residue of the real estate owned by Mason Throckmorton.

It appears from the evidence that he paid to her from time to time considerable sums of money, though the amount thereof is not shown, and that he bought from the estate of Robert James, deceased, a tract of land of forty acres, for which he paid $1,600, and had it conveyed to the appellant by deed dated June 12, 1879, of which she knew nothing until it was done. This land she still owns, and her right to it is not questioned.

Thus there was a total failure to prove that any of the appellant's estate was used in paying for any land conveyed to her husband, or to trace the investment of any particular part of her estate in his personal property. Her case rests simply on the presumption from circumstances, the receipt and possession of her property and money by her husband, that

it was so used.    Presumption is not proof.    The evidence falls far short of the certainty and clearness required in a case of this kind, and her claim to a resulting trust in the real and personal property possessed by her husband must fail.

In the view that we take of this case, we do not deem it necessary to decide the relative rights of the husband and wife to the property and moneys inherited and acquired by her, but conceding for the sake of argument that it was all her legal separate estate, and was used in paying for the property in which it is sought to establish a resulting trust, her claim to it must still fail.

In the first place, in any event, her right would be subordinate to the deeds of trust in favor of Mary A. Mead and Nathan T. Brown, and H. H. Russell, guardian.    The record title to the land is in Mason Throckmorton, and there is nothing to show, or to suggest even, any right or claim to it in Annie E. Throckmorton.    Nor is there any evidence of any kind in the record of the case, or allegation even in the bill, that the trustees or beneficiaries in the deeds of trust had notice of any right in or claim by her to the land.    And they deny all notice.    They stand before the court as *bona fide* purchasers for value without notice (*Evans, trustee,* v. *Greenhow et als.*, 15 Gratt. 153, and *Shurtz et als.* v. *Johnson et als.*, 28 Gratt., 657), and belong to a class of persons who are favorites of a Court of Equity.    Story's Eq. J., sec. 410; *Carter* v. *Allen et als.*, 21 Gratt. 241; and *State Bank of Va.* v. *Blanchard et als.*, 90 Va. 22.

Again, the record shows that Annie E. Throckmorton united with her husband in the sale of her lands and permitted him to receive the proceeds of the sale.    She likewise permitted him to receive and appropriate the bonds that were turned over as a part of the estate of her mother and also of her grandfather, and to receive and use the moneys to which she was entitled from their estates.    This was done with her full

knowledge and acquiescence.    No complaint was made by her
against it, nor any claim asserted by her to the moneys or the
property in which she alleges that they were invested by her
husband, until the institution of this suit.    She neither took
nor required of him any obligation for their repayment, nor
raised any account against him.    She exacted no promise from
him to repay, or return them.    She knew of the acquirement
of property by her husband in his own name, and enabled him
on the faith and credit of it to contract a large indebtedness.
There is nothing in the evidence, in view of their relations as
husband and wife, to create the relation of debtor and credi-
tor.    Under these circumstances, the law does not imply a
promise of repayment, as would be the case if they were stran-
gers, but presumes that the receipt and use of her moneys and
her property, or its proceeds, was a gift of them by her to
her husband and not a loan.    *Beecher* v. *Wilson, Burns &
Co.*, 84 Va. 813; *Temple* v. *Williams*, 4 Ire. Eq. 39; *Mc-
Lure* v. *Lancaster*, 58 Amer. R. 259; *Bennett* v. *Bennett*,
37 W. Va. 396; *Driggs & Company's Bank* v. *Norwood*, 50
Ark. 42; *Edelin* v. *Edelin*, 11 Md. 415; and *Osburn et al.* v.
*Throckmorton*, 90 Va. 311.

In *Tyson* v. *Tyson*, 54 Md. 35-38, the court said:

"If the husband received and applied the fund, whether
money, goods, or chattels, or collected *choses in action*, with
the wife's privity and consent, and without an agreement or
promise to repay or restore it, no legal obligation rests on the
husband to restore it; no right of action enures to her; and
to that extent, her rights are extinct."

The facts disclosed by the record, so far from impairing this
presumption of law, strongly support it.    The property and
moneys of the appellant were all received and used by her hus-
band when their domestic relations were cordial and affection-
ate, and they lived together in peace and harmony.    She
knew that he had taken the conveyance of the farm and lots

to himself in his own name, and united with him in the deed of trust to secure the loan from Mary A. Mead. The deed of trust described the land as his; that it was conveyed to him by his father, and when she executed it, it was explained to her, and she was privily examined in regard to it, as the law required. In the suit instituted in 1887 by her to obtain a divorce from her husband, she made no claim to the property as hers by right of her money having been invested in it. The statement in her original bill was:

"That when she married her said husband, she had some ten or twelve thousand dollars worth of property, which went into his hands; that for the first years of her marriage they lived happily together and he was kind and considerate; and that he is now seized and possessed of a handsome estate in Loudoun county worth at least $25,000." And in her amended bill in said suit, she reiterates, "that at the time of and subsequent to her marriage she was possessed in her own right of property of the value of $10,000, which passed into her said husband's hands and was appropriated for his own purposes." This suit was decided by this court at its March term, 1890, and the divorce refused.

Her husband afterwards brought suit against her for a divorce on the ground of desertion, and in her answer to his bill, after enumerating and describing the property she had inherited and acquired, and its value, and alleging that he had invested it in his present estate, she says:

"If the court sees fit to grant the divorce prayed for, she respectfully insists that in the exchange for the extinction of her dower in 300 or 400 acres of complainant's land, and of her other rights as wife, she be granted and secured the same right she would have had, if the land she so inherited were yet unsold; that is, that she be allowed the principal of the said proceeds, $5,098, free from the marital rights of complainant."

While she refers to and describes in her answer all the

property she had inherited or acquired, and alleges that it was invested in the estate then held by her husband, the very estate in which she now seeks to establish a resulting trust, she distinctly describes it as *his*, and simply asks that a certain sum be allowed her in lieu of her contingent right of dower in his land, and of her other rights as wife. She asserts no right or claim to it in either suit by reason of the investment of her property or moneys in its purchase. She makes no complaint that he had taken the title to the realty in his own name instead of hers; asserts no promise on his part to do so, or that she parted with any of her property on any such condition; and makes no suggestion even of a resulting trust in her favor. But there is the implied, if not express, admission, that the estate was *his*.

She seeks to excuse herself from failing to bring forward heretofore the claim she now asserts on the ground that she was ignorant of the Married Woman's Act passed April 4, 1877, and that it made her own all the property inherited or acquired by her, and excluded the marital rights of her husband. This is nothing less than the simple declaration that she was ignorant of the law of the land. Her excuse is based on a mistake of law and not of fact, and cannot avail her. The distinction between mistakes of law and fact, as a foundation for equitable relief, is well established. A Court of Equity may grant relief where the mistake is one of fact, but it would be liable to the greatest abuse to permit one to reclaim his property upon the mere pretense that at the time of parting with it he was ignorant of the law affecting his title. The wisdom of the rule which forbids it is founded in sound wisdom and policy. *Zollman* v. *Moore et als.*, 21 Gratt. 313; and *Wimbish* v. *Commonwealth*, 75 Va. 839.

The Married Woman's Act does not restrict, but unfetters, the property of a married woman, and removes obstructions to her right to dispose of it as she may please. It does not

prevent her from giving her property to her husband if she chooses to do so, ''nor abrogate the presumption that under the circumstances, such as exist in this case, she has done so.''

It was earnestly urged by the counsel for the appellees that the rights of the appellant to the property now in controversy were involved in the suit brought by her husband to obtain a divorce from her, and that they are concluded and barred on the principle of *res judicata*. The court in that case granted the divorce and gave a decree for costs against the plaintiff, her husband, but made no order in regard to the rights of property of the parties. The decree is wholly silent on that subject. We have reached on the merits the same conclusion that would follow if the defence of *res judicata* was held valid; and, as it is not therefore necessary to decide upon its validity, we desire to be considered as expressing no opinion in regard to it.

We find no error in the decree complained of, and it must, therefore, be affirmed.

AFFIRMED.