# Richmond

## JOHN CARLTON HUDSON, JR., ET AL. v. ETHEL H. CLARK, ETC., ET AL.

December 1, 1958.

Record No. 4839.

Present, All the Justices.

The opinion states the case.

*William L. Parker*, for the appellants.

*Edward L. Breeden, Jr.* and *Robert R. MacMillan* (*Breeden, Howard & MacMillan; Shelby Fitze*, on brief), for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This proceeding was instituted in August, 1953, by John Carlton Hudson, as co-executor of the last will and testament of George P. Hudson, deceased, and as surviving executor of Anna Mary Hudson, deceased, against Ethel H. Clark, in her own right and as co-executor of the last will and testament of George P. Hudson, Helen K. Hudson, in her own right and as executrix of the last will and testament of George P. Hudson, Jr., deceased, Maury Court, Incorporated, and New Homes Corporation, both Virginia corporations, John Carlton Hudson, Jr., Barbara Hudson Bond Pincus,

formerly Barbara Hudson Bond, and Janet Florence Hudson Judge, formerly Janet Florence Hudson, then an infant, but now of age. The complainant alleged that a controversy existed between him and the defendants as to whether certain property and assets belonged to the estate of Anna Mary Hudson or to the estate of George P. Hudson, and as to the rights and liabilities of the several parties. He prayed for the advice, guidance and direction of the court with respect to his duties and obligations as executor of the estates of the two deceased persons and for declaratory judgments adjudicating the respective rights and liabilities of the parties.

The defendants, both individuals and corporations, filed answers to the bill. Ethel H. Clark and Helen K. Hudson filed an answer and cross-bill naming all other parties as cross-defendants, and praying for the removal of J. Carlton Hudson as executor, because of improper and illegal conduct in his fiduciary capacity. Answers were filed to the cross-bill, and thereafter Ethel H. Clark and Helen K. Hudson filed an amended and supplemental bill, to which all cross-defendants filed answers.

The cause was referred to Thomas H. Willcox, Sr., Commissioner in Chancery, to inquire into and report to the court, among other matters: (1) The ownership of the capital stock of Maury Court, Inc., and the liabilities of that Corporation; (2) An account of the assets, receipts, and disbursements of New Home Corporation, and what part of the assets of that Corporation constituted profits distributable as dividends, and what part constitued capital; (3) What was the liability, if any, of J. Carlton Hudson, Jr., to New Home Corporation; (4) Whether any of the parties occupying a fiduciary relationship had been guilty of misconduct and breach of duty; and (5) All other matters deemed pertinent by the Commissioner or requested by any party to the cause.

The evidence was heard *ore tenus* before the Commissioner, and after the case was argued before him, he filed a report upon all of the issues involved. While numerous exceptions were taken to the report by both parties, the findings of the Commissioner on only the first three inquiries are presented to us. The Commissioner found that all of the issued and outstanding capital stock of Maury Court, Inc., was owned by the estate of Anna Mary Hudson; that the net income of New Home Corporation, as net income is defined in § 55-259, Code of Virginia, 1950, was distributable income to the life tenants, and that J. Carlton Hudson, Jr., was indebted to New

Home Corporation in the sum of $1712, with interest from October 20, 1950, until paid. The Commissioner further reported that if the trial court should be of opinion that Mrs. Anna Mary Hudson was not the beneficial owner of the stock, then she was entitled to the benefit of a lien of a deed of trust upon land conveyed by her to Maury Court, Inc., for the unpaid balance of its purchase price, and that such indebtedness was not barred by the statute of limitations.

The trial court approved and confirmed the Commissioner's report in all respects, and directed him to further proceed to have certain accounts audited and report to the court. From that decree, J. Carlton Hudson, Jr., Barbara Hudson Bond Pincus and Janet Florence Hudson Judge, seeking a reversal of the court's decree on the three issues above mentioned, applied for and were granted this appeal.

Anna Mary Hudson died June 2, 1935, testate, and by her will left her entire estate to her husband, George P. Hudson, for life, with remainder in fee simple to her three children, J. Carlton Hudson, Ethel H. Clark and George P. Hudson, Jr., share and share alike. She named her husband and her sons, J. Carlton Hudson and George P. Hudson, Jr., as executors, and her husband and J. Carlton Hudson qualified as such.

George P. Hudson died testate on September 16, 1950, leaving his estate to his three children above named for and during their natural lives. He specifically directed that the "income received" from the life estate devised to his three children should after "the payment of taxes, insurance, repairs and other necessary expenses," be "divided equally between" those children. He then provided that upon the death of one of his children, his two surviving children should, during the term of their natural lives, receive the net income above mentioned, share and share alike; but that in the event J. Carlton Hudson, Sr., should "not be the longest liver of" his then two surviving children, one-half of his estate was to go to the last survivor of his children, for his or her life, and the remaining one-half to the children of J. Carlton Hudson, Sr., "equally to be divided between them," until his "last surviving child" died; and that upon the death of his "last surviving child," all of the rest, residue and remainder of his estate should go to the three children of John Carlton Hudson, Sr., their heirs and assigns forever, share and share

alike. He appointed his three children executors of his last will and testament, and they qualified as such.

George P. Hudson, Jr., survived both his mother and father, and died testate on May 26, 1953. He left surviving his widow and executrix, Helen K. Hudson, as his sole beneficiary. One child born to George P. Hudson, Jr., is still living; but is not a necessary party to this proceeding. John Carlton Hudson, the original complainant, is married to Lillian B. Hudson. Ethel H. Clark is a widow without children. George P. Hudson and John Carlton Hudson, his son, will be hereinafter respectively designated as George P. Hudson, Sr., and John Carlton Hudson, Sr. It will be noted that both George P. Hudsons are dead, and that both J. Carlton Hudsons are alive.

There are several assignments of error; but the controlling questions are whether the evidence was sufficient to sustain the findings of the Commissioner and whether the law was properly applied thereto.

The evidence was heard, as we have heretofore said, in the presence of the Commissioner. It is voluminous and includes a large number of exhibits. It is apparent from the report of the Commissioner, an able and experienced attorney at law, that he gave full and careful attention to all matters presented to him. His report is exhaustive and comprehensive. He fully recognized that the facts were in conflict, and in certain respects circumstantial.

■ It is well to note at the outset that it is established in Virginia that the conclusions of a commissioner, where the evidence has been taken in his presence, should be sustained unless it plainly appears, upon a fair and full review, that the weight of the evidence is contrary to his findings. Although the trial court is given power of review over his findings, it cannot arbitrarily disturb the report, if it is supported by sufficient proof. Virginia Code § 8-250. *Leckie v. Lynchburg Trust, Etc., Bank,* 191 Va. 360, 364, 60 S. E. 2d 923; *Reese v. Reese,* 196 Va. 1028, 1036, 1037, 87 S. E. 2d 133; 16 M. J., References and Commissioners, § 33, pages 29, 30, 31, and numerous cases cited.

■ It appears that in or about 1930, Anna Mary Hudson inherited some real estate from her mother, and later acquired more. She and her husband had a happy home life, and each enjoyed the full confidence of the other. From time to time he made valuable gifts

to her, and she, in turn, entrusted her business affairs to him, and made available her resources in his business ventures.

In 1919, Lots numbers 19, 20 and 21, in Block "A", in the City of Norfolk, Virginia, were acquired by Anna M. Hudson in fee simple by two deeds. It is not shown whether she purchased the lots with her own funds or from money supplied by her husband. It is clear, however, that she became vested absolutely with full title to the property as her sole and separate estate, regardless of the source of the purchase price.

In 1927, George P. Hudson, Sr. obtained a certificate of incorporation for Maury Court, Inc. The purpose for which it was formed was stated to be to acquire, own, hold, lease, mortgage, and sell improved or unimproved real estate, to construct, erect, and operate houses, buildings, etc. Its capital stock was to be not less than $1500 nor more than $25,000, divided into shares of the par value of $100 each. Its officers were named as George P. Hudson, Sr., George P. Hudson, Jr., and Lillian B. Hudson, respectively, President, Vice-President, and Secretary-Treasurer. The same individuals constituted the Board of Directors. The pertinent portions of the minutes of the first meeting of the incorporators, held on October 21, 1927, show that a resolution was adopted authorizing the purchase "for cash or stock" from Anna M. Hudson for the sum of $20,000, three lots designated as "Lots 19, 20 and part of 21, in Block 'A'," in the City of Norfolk. It was also further resolved that the Board of Directors of the Corporation authorize the issue of capital stock "for cash or property" to the amount of fifteen hundred dollars. The minutes further recited that it was the purpose and intent of the Corporation to erect an apartment house on the three lots: that it was "necessary to execute a deed of trust to the Prudential Insurance Company of America for the sum of $32,000, constituting a first mortgage, a second deed of trust for the sum of approximately $    , and a third deed of trust for the sum of $18,500;" and that the Board of Directors and officers of the Corporation were authorized to "make and issue" the said deeds of trust securing the above amounts upon the entire property to be conveyed to it by Anna Mary Hudson.

On the same day, the Board of Directors of Maury Court, Inc., at their first meeting, authorized the President and Secretary of the Corporation to enter into contracts or deeds to purchase the above mentioned three lots for $20,000, "for cash or stock of this Company

from Anna M. Hudson," in accordance with the resolution of the stockholders. Then, by further resolution, the Board authorized and directed the issue of certificates of the capital stock of the Corporation "to the aggregate amount of Fifteen Hundred Dollars ($1500.-00)," and authorized and directed the proper officers of the Corporation "to enter into contracts, execute deeds of trust, and all other deeds or documents incidental to the business of the Corporation," with Anna M. Hudson, George P. Hudson, Prudential Insurance Company, and other parties, "in accordance with the written option submitted" by George P. Hudson, his wife, and Prudential Insurance Company, and other parties. The officers were then directed to file with the State Corporation Commission a report and statement with reference to the basis of the proposed issue of stock. The minutes of both meetings were unsigned; but were kept in the minute book of the Corporation, and admitted to be a true record of what took place.

The books of the Corporation, which contain a partial record of its financial affairs, show an original indebtedness of $18,500 to Anna M. Hudson by "installment contract," of which sum $690 was repaid during her lifetime. No other obligation is shown to be due Mrs. Hudson, and no entry shows the receipt of $1500, or any other sum for stock, or that any asset came into the Corporation except the above three lots which were conveyed to the Corporation by Mrs. Hudson by deed dated October 22, 1927, and duly recorded.

N. C. Hoffler, Jr., a certified public accountant, who examined the books and records of Maury Court, Inc., and testified on behalf of the appellees, said, referring to the transaction in connection with the purchase of Mrs. Hudson's lots by Maury Court, Inc., and the consideration therefor, that:

"It is an entry set up for land, buildings, furniture and equipment with offsetting entries to a mortgage, first deed of trust note, payable to George P. Hudson, Sr., capital stock, and so far as the land is concerned, I would say it is set up to be $20,000 of credits to installment contract due Anna M. Hudson, $18,500, and capital stock of $1,500.00."

Upon being asked if that was "just an inference from the fact that the figures balance?", he replied: "To me that was what actually happened."

W. P. Sellers, a registered public accountant, who testified on behalf of the appellants, said that George P. Hudson, Sr., told him,

after the death of Mrs. Hudson, that the debt of $18,500 was owed to him and not to the estate of Anna Mary Hudson.

On cross-examination, Sellers testified in response to questioning by counsel for Mrs. Clark as follows:

"Q. And $20,000.00 for the land, and offsetting entries for those two items are the installment contract due Mrs. Anna M. Hudson, $18,500.00, and $1,500.00 in capital stock. It adds up to that?

"A. Yes, it adds up to $20,000.00."

Upon the organization of Maury Court, Inc., seven shares of stock were issued in the name of Lillian B. Hudson, wife of J. Carlton Hudson, Sr.; one share to George P. Hudson, Jr.; and seven shares to George P. Hudson, Sr. At the time of the trial, the seven shares issued to George P. Hudson, Sr. and the one share to George P. Hudson, Jr., were endorsed in blank. The seven shares issued to Lillian B. Hudson were transferred by assignment to George P. Hudson, Sr., on April 22, 1941, six years after Anna Mary Hudson's death. Attached to that stock was a note addressed by Mrs. Lillian B. Hudson to her husband, which recited: "This is to authorize you to use my stock in Maury Court, Inc., for whatever purpose you desire." Mrs. Lillian B. Hudson did not claim, during this proceeding, any right or interest in that stock. Her husband testified that the stock belonged to George P. Hudson, Sr., from the time of the organization of the Corporation. All of the certificates for the shares of the above stock were in the physical possession of George P. Hudson, Sr., at his death.

The deed of trust authorized to be executed to secure Anna M. Hudson was never recorded, and so far as the record shows never executed. There is nothing on the books of the Corporation to show that she ever received $1500 in cash from the Corporation.

It further appears that on March 15, 1928, Maury Court, Inc., filed with the State Corporation Commission of Virginia a statement relating to the basis upon which its stock was to be issued, setting forth that it proposed to issue fifteen shares of the aggregate par value of $1500 to be paid for in "money," and added "Fifteen shares, $1500.00 cash money."

Appellants contend that the books of the Corporation reveal only that it was indebted to Mrs. Hudson on an open account for $17,890, and that said debt is barred by the statute of limitations; that the statement filed with the State Corporation Commission of the intention of the Corporation to issue its capital stock for "money"

proves that the fifteen shares which were issued could not have belonged to Mrs. Hudson, or have constituted a part of the purchase of the real estate; and that the fact that the certificates for the shares of stock issued were in the physical possession of George P. Hudson at his death shows conclusively that his estate owned the stock.

There is no evidence that George P. Hudson, Sr., claimed ownership of the stock before the death of his wife. The dispute as to its ownership arose in 1950 or 1951, between the children and grandchildren of George P. Hudson, Sr.

It is true that the stock was not listed in the inventory of the estate of Anna Mary Hudson, filed by George P. Hudson, Sr., and J. Carlton Hudson, Sr., as executors of her will, and that, at all times, it was held, endorsed in blank, by George P. Hudson, Sr., and is still so held by his executors. However, there are two written instruments, which show that upon the death of Mrs. Hudson both her husband and her son, J. Carlton Hudson, Sr., considered the stock as an asset of her estate.

In 1935, shortly after the death of his mother, J. Carlton Hudson, Sr., as co-executor and attorney for her estate, sent to Ethel H. Clark and her brother, George P. Hudson, Jr., a list of the assets of the estate of Anna M. Hudson, which contained the following item:

"*MAURY COURT, INCORPORATED*     $18,500
Installment Contract—Present Value Probably Nil."

Asked why that was put on the list as an asset of his mother's estate, J. Carlton Hudson, Sr., replied: "Father asked me to." At the hearing before the Commissioner, he first denied making or sending out any statement or list; but later at the trial, he admitted the verity of the above statement and the fact that it was approved by himself and his father. He also admitted that he had taken no steps to collect the balance of $18,500, shown on the books of Maury Court, Inc., to be due the estate of his mother.

The second written instrument was the income tax return of George P. Hudson, Sr., for the year 1936. In that return, he reported as follows: "Income from fiduciaries, Maury Court, Inc., Norfolk—$2,500.00." If he owned the Corporation by virtue of holding its entire stock, there was no reason for him to treat the income received from Maury Court, Inc., as arising from a fiduciary source. As life tenant, under his wife's will, he was entitled to the net rents earned from the operation of Maury Court, Inc. His action showed that he considered Maury Court, Inc., an asset of his wife's estate,

from which he was entitled to the income under her will. The stock not having been included in the inventory of Mrs. Hudson's estate, escaped inheritance and estate taxation, for which it might have been liable.

It is settled law generally where a confidential relationship exists between the parties, especially where they are husband and wife, that when a husband takes title in his own name to property purchased with his wife's money, a resulting trust is created in her favor, unless it be shown that the money was a gift or loan to her husband. If it be claimed that she intended the purchase money as a gift or loan to him, the burden of showing that fact is on the husband or those claiming under him. 19 M. J., Trusts and Trustees, § 33, pages 85, 86; 89 C. J. S., Trusts, sections 105, page 955, 127 (b), page 987, and 132, page 997, Cf. *Mumpower* v. *Castle*, 128 Va. 1, 18, 19, 104 S. E. 706.

The records of the Corporation and the evidence of appellees make it reasonably clear that a credit of $1500 on the purchase price of the land of Mrs. Anna Mary Hudson was the sole consideration for the fifteen shares of stock issued by Maury Court, Inc. As we have said, there is no evidence that George P. Hudson, his son, or daughter-in-law ever paid a penny for the stock. From the confidential relationship which existed between George P. Hudson, Sr., and his wife, and their complete trust in each other, it may be readily implied that the manner in which the stock was issued was merely a matter of convenience for the parties involved.

There is ample evidence supporting the finding that Mrs. Anna Mary Hudson was, at all times, the beneficial owner of the stock issued by Maury Court, Inc., and that her estate cannot be deprived of it by the failure of the officers of the Corporation and her executors to properly act. In view of this, we need not consider the questions whether Anna Mary Hudson is entitled to the benefit of a lien of a deed of trust upon the property of Maury Court, Inc., and whether such indebtedness is barred by the statute of limitations. These questions are moot, since Mrs. Hudson was vested, at all times, both with title to the said debt and was the beneficial owner of the entire capital stock of Maury Court, Inc.

There is no merit in the contention that the issue of the capital stock of Maury Court, Inc., in exchange for property rendered the transaction void because the Corporation filed a statement signifying its intention to issue stock only for cash or money.

Section 13-97 of the Code of 1950, prior to its amendment in 1956, Acts of Assembly, 1956, Chapter 428, now Code, § 13.1-16, provided that no stock should be issued for property unless in a statement to the State Corporation Commission, there was set forth fully and accurately the basis upon which such stock was to be issued other than for money. It further required that the statement should accurately specify and disclose the property and the valuation at which it was to be received, and fixed a penalty against an offending corporation for violation. As amended in 1956, § 13.1-16 provides that such verified statement shall be filed and the corporation fined for failure to properly file the same, and then adds the provision: "but failure to file such a statement shall not impair the legality or validity of the issue." The filing of the statement with the State Corporation Commission was merely evidence of the intention of the directors of Maury Court, Inc. What Maury Court, Inc. really did is shown by the resolutions of the stockholders and directors.

The following citation from 13 Am. Jur., Corporations, § 218, is pertinent in this connection:

"Statutory provisions regarding the consideration for which stock may be issued or the manner of payment thereof are considered to be intended for the benefit of the corporation; and stock issued in violation of the statute is held to be not void, but voidable at the instance of the corporation."

■ We come next to the question as to what part of the assets of New Home Corporation constituted profits distributable as income to the life tenants under the will of George P. Hudson, Sr., and what part constituted capital to be held for the remaindermen.

Two of the executors, George P. Hudson, Jr., during his lifetime, and Ethel H. Clark, contended that the net income from the sale of the developed lots of the Corporation, or so much thereof as the directors of the Corporation thought advisable, should be distributed to the life tenants as a cash dividend. J. Carlton Hudson, Sr., on the other hand, claimed that such net income was not distributable as dividends; but should be credited to the principal of the Corporation and upon the death of the life tenants should pass to the remaindermen, that is, his three children, the appellants here. He did concede that the life tenants were entitled to the interest on net profits invested by the Corporation, as dividends.

The question is not a new one. It has come before the courts of many states, and the decisions are widely in conflict. It is dis-

cussed at length and the reasons for the various rules stated in Volume 12, Fletcher's Cyclopedia of Law of Private Corporations, (1957), § 5393 to § 5405, inclusive, § 5404.1 and § 5411, and annotations entitled "Right as between life beneficiaries and remaindermen, or surviving life beneficiaries, in corporate dividends or distributions during the life interest," in 130 A. L. R. 492, and 44 A. L. R. 2d 1277. However, the queston is now settled in Virginia by statute under the provisions of the Uniform Principal and Income Act, Code 1950, sections 55-253 to 55-259, inclusive.

Appellants rely specifically upon subsection (2) of § 55-255 and subsection (3) of § 55-257, neither of which we think applicable to the situation here. The issue before us is resolved by subsections (1) and (2) of § 55-259.*

George P. Hudson, Sr., organized New Home Corporation in 1923, for the purpose of acquiring a large tract of land near Norfolk, in Princess Anne County, Virginia, to be thereafter subdivided and developed into residential lots and streets for sale to the public. Thirty shares of stock were issued to George P. Hudson, Sr.; five shares to George P. Hudson, Jr.; five shares to J. Carlton Hudson, Sr.; and fifteen shares to H. L. Lowery. At the time of his death, George P. Hudson, Sr., had acquired, by assignment and transfer, all of the capital stock of the Corporation. The Corporation never had any assets except land and the proceeds from the sale thereof. Its real estate was its "goods, wares, and merchandise," just as groceries and food products constitute the assets of a groceryman. The only income, revenue or profits New Home Corporation received from any source came from the sales of its lands, and this was the only source from which the stockholders could receive dividends. The object of the Corporation being to obtain a profit for its stockholders, they necessarily looked to the proceeds from sales to produce income available as dividends.

New Home Corporation was a separate entity, organized and

---

*"(1) Whenever a trustee or a tenant is authorized by the terms of the transaction by which the principal was established, or by law, to use any part of the principal in the continuance of a business which the original owner of the property comprising the principal had been carrying on, the net profits of such business attributable to such principal shall be deemed income.

"(2) When such business consists of buying and selling property, the net profits for any period shall be ascertained by deducting from the gross returns during and the inventory value of the property at the end of such period, the expenses during and the inventory value of the property at the beginning of such period."

created to conduct, through its officers, the sale of real estate, separate and apart from the individual affairs of its stockholders. It did not become extinct upon the death of George P. Hudson, Sr., and there was nothing to indicate that he intended it to be then liquidated. The fact that he invested his money in the Corporation showed that he chose that manner of business operation, the liabilities and responsibilities involved therein, and the permanency of the organization. While his executors controlled the Corporation by reason of stock ownership, such ownership did not constitute a carrying on of the business by them as fiduciaries of their decedent. Upon the death of George P. Hudson, Sr., the officers of the Corporation continued its business in a manner in all respects similar to that in which it was theretofore conducted and in accordance with the purpose for which it was organized. All of the interested parties were aware of that fact and none protested. Some of them organized another corporation for the specific purpose of contracting with New Home Corporation for the further development and sale of real estate of New Home Corporation.

By reason of location and demand, the land of the Corporation constantly increased in value. In 1950, upon the death of George P. Hudson, Sr., the stock of the Corporation was valued by the appraisers of his estate at $21,435.79. By continued operations and taking advantage of the demand since 1941, subdivided lots have been sold at an estimated net profit of $45,000, and the remaining land is valued as worth between $15,000 and $20,000 at present prices. During Hudson's lifetime, many lots were sold by the Corporation and profits on the sales were declared as dividends and paid to him. It is manifest that the surplus money of the Corporation as of December 31, 1954, was more than ample to provide sufficient funds for working capital and to allow the payment of a cash dividend to stockholders. The failure to distribute the earnings withheld from the life tenants what was properly income.

George P. Hudson, Sr., was also interested in a number of other corporations of like nature, some of them engaged in buying and selling real estate, and it is apparent that he preferred to employ corporate entity for such purposes, regardless of any income tax liability upon the Corporation, and upon dividends received by stockholders.

It is clear from the language of the will of George P. Hudson, Sr., that he intended the income from the estate devised in life to be

enjoyed by the life tenants. Had he intended his grandchildren to receive absolutely his corporate stock, carrying all accumulations and profits of the Corporation, he would have left that stock directly to those grandchildren. Had he intended to liquidate New Home Corporation, he could have done so at any time he desired, or directed dissolution by his last will and testament.

The trial court approved the finding of the Commissioner that the net profits of New Home Corporation should be considered as income inuring to the benefit of the life tenants, as ascertained under Code, § 55-259, and that it was the duty of the directors of the Corporation to distribute such net income to the stockholders in view of the fact that there were earnings and surplus more than sufficient for the needs of its business. *Penn* v. *Pemberton & Penn*, 189 Va. 649, 658, 53 S. E. 2d 823. Thereupon, it decreed that net income of New Home Corporation, as net income is defined in Code, § 55-259, for the periods specified in the decree, should be distributed as dividends to the life tenants under the will of George P. Hudson, Sr.

For application of the above principle, see: *In re Gartenlaub* (1921) 185 Cal. 375, 197 P. 90; *Reed v. Head* (1863) 6 Allen (88 Mass.) 174; *Balch v. Hallet* (1858) 10 Gray (76 Mass.) 402; *Matter of James* (1895) 146 N. Y. 78, 48 Am. St. Rep. 774, 40 N. E. 876 *Washington County Hospital Association* v. *Hagerstown Trust Co.*, (1914) 124 Md. 1, 91 Atl. 787; *Krug* v. *Merchantile Trust & Deposit Co.*, (1918) 133 Md. 110, 104 Atl. 414; *Oliver's Estate* (1890) 136 Pa. 43, 20 Atl. 527; *Thomson's Estate* (1893) 153 Pa. 332, 26 Atl. 652; Fletcher, Cyclopedia of Law of Private Corporations, Vol. 12, section 5411.

The evidence justified the finding that J. Carlton Hudson, Jr., is indebted to New Home Corporation in the sum of $1,712, with interest thereon from October 30, 1950, until paid. This debt resulted from the allowance of a credit to J. Carlton Hudson, Jr., against New Home Corporation in a transaction and accounting relating to property known as Hartford Apartments, title to which was first taken in the name of New Home Corporation, and subsequently conveyed to J. Carlton Hudson, Jr., whereby a balance was due J. Carlton Hudson, Sr., of $1,712, a debt long barred by the statute of limitations. J. Carlton Hudson, Sr., executor of the estate of George P. Hudson, Sr., allowed his son to credit the above named

sum due him against sums due by J. Carlton Hudson, Jr., to New Home Corporation.

In conclusion, the evidence showed the very loose manner in which the fiduciary parties undertook to perform their services. It also disclosed their respective personal interest in the advancement of their contentions. J. Carlton Hudson, Sr., was the personal advisor and attorney for his mother and father, a co-executor of each of their estates, an officer of Maury Court, Inc., and New Home Corporation, and general counsel for both. He was remainderman under the will of his mother and life tenant under his father's will, and his children are remaindermen under his father's will. While he agreed to borrow no money from his father's estate, he did borrow the sum of $15,000 to assist in the purchase of a farm for his personal use, without the knowledge or consent of his co-executors. This sum he repaid after this proceeding was instituted. He also loaned his son, J. Carlton Hudson, Jr., money of Maury Court, Inc., and New Home Corporation to purchase the Hartford Apartments. There were other instances in which he was charged with non-feasance in performing his duty as executor of the estates of his mother and father.

While J. Carlton Hudson, Sr., instituted this proceeding, and was the main witness for appellants in the trial court, he did not join in the appeal which was sought by his three chlidren. His testimony was uncorroborated and contradicted on many pertinent points. The Commissioner having accepted the evidence of the appellees, we must give that acceptance the weight it is entitled to.

We find no merit in the claim of appellants that the entity of the corporations mentioned should have been disregarded in the interest of justice. No facts, reason or authority are cited to support the claim. The only reason assigned is that it was the duty of the executors to have liquidated New Home Corporation, upon the death of George P. Hudson, Sr., its sole stockholder, invest its net assets in some form of interest-bearing security, and then distribute the income therefrom, thereby obviating the payment of a tax on the net earnings of the Corporation and a further tax upon a portion of those earnings distributed as dividends to life tenants.

All of the evidence and circumstances point to the desire of George P. Hudson, Sr., to operate the Corporations formed by him as separate entities, and his will clearly showed that he gave to the life tenants the income from the property devised to them for life.

It would be, in our view, contrary to the ends of justice to hold otherwise.

Because of the controversy between the parties and their inability to agree as individuals or co-executors, and because J. Carlton Hudson, Sr., had been more or less careless, indifferent, and incompetent in handling the affairs of the Corporation, upon the Commissioner's recommendation, the trial court removed J. Carlton Hudson, Sr., as co-executor. Ethel H. Clark was removed because she was a non-resident. George P. Hudson, Jr., had already departed this life. The National Bank of Commerce of Norfolk and Robert R. MacMillan have qualified as co-executors d. b. n. c. t. a. of George P. Hudson, Sr.'s, estate. No exception has been taken by either party to these actions.

For the reasons stated, the decree appealed from will be modified by eliminating therefrom the unnecessary adjudication that the property of Maury Court, Inc., should be considered as impressed with a lien in favor of the estate of Anna Mary Hudson for $17,890, balance of the purchase price of the lots mentioned, and that the said indebtedness is not barred by the statute of limitations. As so modified, it is affirmed and remanded to the trial court for such further proceedings as may be necessary and proper. Appellees will recover their costs.

*Modified and affirmed.*