## Richmond

BEATRICE E. MUTH, ETC. v. WILLIAM R. GAMBLE, III, ETC., ET AL.

December 1, 1975.

Record No. 741139.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Anthony L. Montagna, Jr.*, for appellant.

*Donald W. Shriver (Parsons, Steffen & Moore,* on brief), for appellees William R. Gamble, III and Ronald A. Gamble.

HARRISON, J., delivered the opinion of the court.

William R. Gamble, III, and Ronald A. Gamble, grandchildren of Camille G. Caswell, deceased, filed a bill of complaint in the court below against Beatrice E. Muth, a daughter of the decedent, Karen H. Stanton, another grandchild of the decedent, and others, seeking to have set aside as a forgery and as fraudulent a certain deed allegedly executed by Camille G. Caswell to Karen H. Stanton, dated September 11, 1970, purporting to convey property in the City of Chesa-

peake, Virginia, known as a lot in Colonial Heights located on the eastern side of Cottage Toll Road. The lower court granted the relief prayed for and appellant appealed.

The Gambles and Karen H. Stanton are the natural children of appellant, Beatrice E. Muth, formerly Beatrice E. Gamble, who is also sometimes referred to as Beatrice E. MacArthur. Camille G. Caswell died on December 15, 1968, after having executed a will making her five grandchildren her residuary legatees and devisees.

Appellant was divorced from William R. Gamble on February 17, 1951. Prior to that time, on November 7, 1949, and as a part of the divorce settlement, Gamble had conveyed to appellant the property involved in this case. On the day the final decree of absolute divorce was entered, appellant conveyed the property to her mother, Camille G. Caswell, who lived in the State of Massachusetts. The deed recites that the property was conveyed "in consideration of love and affection, and other good and valuable consideration". At the time of the conveyance, the property was subject to liens which appellant testified that she subsequently paid.

Appellant gave several explanations for the conveyance, including "harassment" by her husband. She testified that she asked her mother if she could put the house in her name and that her mother said "yes, that I could, as long as she had no financial obligation toward the house". Mrs. Muth also said that her mother had never "set foot in the State of Virginia" and had "never seen the property" and that "[s]he wasn't even aware that her name was on the deed". Appellant, when asked if her mother ever paid her anything for the real estate, answered "No. It was for love and consideration that I turned it over to her. There was never any money that changed hands".

It is clear from the evidence that at all times following the conveyance by appellant to her mother, Mrs. Muth remained in control of the property, either occupying or renting it. She paid the taxes and insurance thereon, made the necessary repairs and satisfied the various liens on the property, other than such liens as existed at the time this suit was instituted.

It is equally clear that subsequent to the February 17, 1951 conveyance, appellant forged the name of her mother to numerous documents which concerned this property. These forgeries occurred both before and after her mother's death. Appellant, on June 5, 1970, pretending to be her deceased mother, executed and acknowledged a deed of trust to Robert Nusbaum and Alan J. Hofheimer, trustees, to secure a loan of $2,000 from R. G. Hofheimer. On September 11,

1970, two years after the death of her mother, appellant, again pretending to be Camille G. Caswell, conveyed the property to her daughter, Karen H. Stanton, who was then an infant. She then had Karen H. Stanton reconvey the property to a trustee to secure a note of $9,000 payable to "Camille G. Caswell".

Mrs. Muth's explanation for her actions was that she had been signing her mother's name for twenty-one years "as to any kind of business that pertained to the house. That was the reason I did it. It was my property. I had the power of attorney. I was in the habit of dealing in her name". However, the paper which Mrs. Muth introduced as a power of attorney was dated "_____ 1959", was allegedly signed by Camille G. Caswell both as the grantor of the power and as the notary, and was neither recorded nor written in proper form for recordation. Appellees argue that the power of attorney was also a forgery, alleging in their brief that "the signature on the same was clearly made by the same party who later made the admittedly forged signatures on the deed of trust and deed of bargain and sale after Mrs. Caswell's death". In no instrument executed by Mrs. Muth did she claim to be signing her mother's name by virtue of a power of attorney or as an attorney-in-fact for her mother. She simply signed her mother's name and represented that she was Mrs. Caswell.

Appellant says that the sole question presented here is whether a resulting trust was created by her transfer, without consideration, of property to her mother. To support this claim appellant relies upon her testimony and the surrounding circumstances. The circumstances are that she in fact lived in or rented the property for approximately twenty-one years, paid off a mortgage thereon, paid the taxes and fire insurance premiums on the property and made certain repairs. To this she adds the alleged power of attorney which she claims was executed by her mother, the validity of which is questionable.

The deed from Mrs. Muth to her mother was in all respects in proper form and valid. It operated to pass good title to Camille G. Caswell, subject only to the existence of a deed of trust on the property, a lien which was subsequently paid. The law is well settled that in Virginia a resulting trust can be proven by parol evidence. *Straley v. Esser*, 117 Va. 135, 83 S. E. 1075 (1915). However, the burden of proving a trust is upon those who assert it, and the evidence must be clear and convincing. *See Salyer* v. *Salyer*, 216 Va. 521, 219 S. E. 2d 889 (1975). In *Smith* v. *Smith*, 200 Va. 77, 80, 81, 104 S. E. 2d 17, 20, 21 (1958), we said:

" 'A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein and where the inference is not rebutted and the beneficial interest is otherwise effectively disposed of.' Vol 2, Restatement of the Law of Trusts, page 1244, 1245.

"In the recent case of *Kellow* v. *Bumgardner*, 196 Va. 247, 83 S. E. 2d 391, we had occasion to state the general principles relating to resulting trusts. There we quoted with approval the following statement from *Irvine* v. *Greever*, 32 Gratt. (73 Va.) 411, 417: " 'The doctrine generally, if not universally recognized is, that when a conveyance of real estate is made to one person, and the consideration paid by another, it is presumed that the party advancing the money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf. But when the conveyance is taken to a wife or child, or to any other person for whom the purchaser is under an obligation to provide, no such presumption attaches.' " 196 Va., *supra*, page 253.

" '* * * (I)f there is evidence that the person who provided the money had some intention other than to secure the benefits for himself, the presumed intention fails and no resulting trust will be recognized.' 196 Va., *supra* page 255.

"Again, 'It is well settled that he who asserts a resulting trust in real property, which is clearly an effort to controvert a duly executed and recorded deed, must establish it by clear and convincing evidence, or, as stated in *Moorman* v. *Arthur*, 90 Va. 455, 477, 18 S. E. 869, 878, the evidence must be "clear, cogent, and explicit." While the burden of proof has been variously stated, it is clear that a mere preponderance of the evidence is not sufficient to establish a resulting trust.' (Citing cases.) 196 Va., *supra*, page 256."

In the instant case, Camille G. Caswell died seized of the real property in question located in Virginia. Those who allege that she was not seized in fee simple of the property, and that it is subject to a resulting trust thereon, are faced with the necessity of complying with the provisions of Code § 8-286, which provides:

"In an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee,

executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence."

If the conveyance of the property by Mrs. Muth to her mother was in fact upon trust, the subsequent conduct of appellant, although improper and unlawful, would not terminate the trust. A resulting trust must accrue at the time legal title is taken. *Beecher Et Al.* v. *Wilson, Burns & Co.*, 84 Va. 813, 6 S. E. 209 (1888). However, such conduct may affect the weight to be accorded her testimony. While it is possible that Mrs. Muth did convey the property to her mother for the reasons assigned by her, and under the circumstances she related, there is no evidence of this, other than her uncorroborated testimony. The property remained in the mother's name from the time of the conveyance in 1951 until her death in 1968. This was long after the alleged harassment of appellant by her husband. Another consideration is that appellant removed certain of her mother's personal effects from the decedent's apartment, which action appellees allege possibly frustrated them, and the representatives of the mother's estate, in their efforts to obtain information regarding the Virginia property. Another question suggests itself: why the numerous forgeries and misrepresentations if the mother had no interest in the property, made no claim thereto, and was a mere trustee?

Also of some significance is the fact that, although Camille G. Caswell died seized of no real estate in Massachusetts, she appointed an executor and gave him express authority to sell her real estate and other property. Furthermore, although the decedent died possessed of a personal estate valued at $8,603.81, her bequest to Mrs. Muth, her daughter, was $50 and a diamond ring. The decedent devised the balance of her estate, *real*, personal and mixed, to her grandchildren, three of the five being children of Mrs. Muth. The only real estate of which Mrs. Caswell was seized, or in which she had any interest, was the property involved in this case.

The commissioner in chancery to whom this cause was referred made a most exhaustive inquiry and found that the evidence introduced on behalf of Mrs. Muth to establish a resulting trust was not clear and convincing, and that it was not corroborated as required

by Code § 8-286. He reported that Mrs. Caswell died seized and possessed in fee simple of the property in question, free of any resulting trust thereon, and that the purported deed from Mrs. Muth to her daughter, Karen H. Stanton, and the deed of trust simultaneously executed, were void and of no effect. Exceptions filed to this report were overruled, the report was confirmed, and the court below decreed accordingly. The court, in addition, made other adjudications which are not involved on this appeal.

It suffices to say that the actions of the lower court are neither contrary to the law nor without supporting evidence. Most certainly, we cannot say upon the record before us that the chancellor is clearly in error.

*Affirmed.*