## CIRCUIT COURT OF HENRICO COUNTY

Alice Wilnetta Grubbs

v.

William Grubbs

March 8, 1977

Case No. 75-C-898

By JUDGE E. BALLARD BAKER

Alice Wilnetta Grubbs contends that a resulting trust was created in her favor in real estate purchased on September 16, 1957, the deed to which named her then husband, William Grubbs, the defendant, as the sole owner.

Alice and William were married July 9, 1952. In July 1955 they bought a home at 3509 Maryland Avenue, taking title as tenants by the entirety. Both were employed at the time. William put $5,000.00 on the down payment and Alice put $500.00 of her money into decorating the house. About one year later, needing a larger house, Maryland Avenue was sold. A check dated August 16, 1956 payable to "William F. Grubbs and Wilnetta Grubbs" for $6,017.70 was received for their interest in the property. Both parties endorsed the check, and in September 1956 it was negotiated by William. The Grubbs moved from Maryland Avenue into an apartment.

William says that the funds from the check were kept at home in his safety box with other funds of his.

On September 16, 1957, title to a vacant lot on Ronnie Avenue was taken in the name of William F. Grubbs. The price was $1,213.50, paid in cash by Mr. Grubbs from money kept at home. The lot was bought to build a house for the family. Some time in 1958 a house was built on the lot at a cost of about $15,500.00. This was financed by a deed of trust for $7,000.00 securing a note on which both of the Grubbs were obligated, and payment of the balance in cash. Mr. Grubbs says he made the cash payments from his funds, and receipts from the builder to him totalling $15,842.76 were introduced. These receipts were dated June 23, June 30 and October 6, 1958. His savings account passbook shows withdrawals of $2,000.00 and $1,608.41 after February 3, 1958, the later amount being withdrawn on October 6, 1958.

The parties lived together in the Ronnie Avenue home until their separation in July 1975. In September 1975, Alice brought this case to impose a trust on the Ronnie Avenue property.

The first question, it seems to me, is to whom did the $6,017.70 check belong and what is the effect of what happened to it?

It is clear that the check was for the equity of Alice and William Grubbs in Maryland Avenue. While all the down payment on Maryland came from William, the property was titled in the name of both and Alice had as much interest in the sales proceeds as did William.

*Hudson* v. *Clark*, 200 Va. 325 (1958), sets forth the following rule which must be considered:

> It is settled law generally where a confidential relationship exists between the parties, especially where they are husband and wife, that when a husband takes title in his own name to property purchased with his wife's money, a resulting trust is created in her favor, unless it be shown that the money was a gift or loan to her husband. If it be claimed that she intended the purchase money as a gift or loan to him, the burden of showing that fact is on the husband. . . (200 Va. 334).

472

*See also* Bogert, Trusts and Trustees (2nd ed.), §§ 458, 460.

Did Alice make a gift to her husband of her interest in the $6,017.70 check? William says she endorsed the check and gave it to him. (Tr. 9, 10, 32), that he negotiated it in September 1956 (Tr. 11, 14, 22, 23, 32), and that he kept the cash at home with other money of his, (Tr. 14, 16, 33, 36), from which he paid all kinds of bills, (Tr. 33, 35, 36). Alice says she endorsed the check, (Tr. 49, 50) the check was given to William to be used on the next house (Tr. 58, 68), that he was to put it in the bank, (Tr. 49, 73), but that she did not at that time know what he actually did with the money. (Tr. 50, 74).

To show that Alice gave her share of this check to William, the burden is on him:

> . . . to establish by clear and convincing evidence every fact and circumstance necessary to show the validity of the gift. (*Nelson* v. *Liggan*, 189 Va. 637 at 645 (1949).)

One requirement is that it be shown that the donor intended to part with title to the thing given and vest it in the donee. (*Nelson* v. *Liggan*, 189 Va. 637 at 645).

While it is clear that Alice endorsed the $6,017.70 check and left it in the possession of William, it is not at all "clear and convincing" that she had any intention to give him her share of that money. William does not say so. Nor did William ever put the money in the savings account he had in his own name. (Plaintiff's Exhibit 3).

Considering all the evidence on the point, I find that William has not shown a gift to him of her share of the check of August 16, 1956.

William contends that there is no showing that any of this check went into the purchase of the lot. The evidence shows that the money was kept at home with other money belonging to William (Tr. 14, 22, 23, 33, 35 and 36), and that from this fund ". . . all kinds of bills were paid . . ." (Tr. 33). The lot cost $1,213.50 and was purchased in September 1957. The construction of the house cost $15,842.76 (Defendant's Exhibit 2), of which $7,000.00 came from a loan from First & Merchants

National Bank on a jointly signed note. (Plaintiff's Exhibit 2). The savings account of William shows withdrawals of $3,608.41 between February 3, 1958, and October 6, 1958. The house was constructed in 1958 and paid for by payments by William to the builder on June 23, June 30 and October 6, 1958. After the October 6, 1958 withdrawal, William had over $4,500.00 in his savings account. There is no evidence how much cash, if any, was left in the fund kept at home after the house was built.

In *Muth* v. *Gamble*, 216 Va. 436 (1975), it is pointed out that, while a resulting trust can be proved by parol evidence:

> the burden of proving a trust is upon those who assert it, and the evidence must be clear and convincing. (216 Va. 438).

Mr. Grubbs argues that this puts a burden on Mrs. Grubbs to prove by "clear and convincing evidence" that her share of the $6,017.70, or a part of it, went into the purchase of the lot.

In *Throckmorton* v. *Throckmorton*, 91 Va. 42 (1895), relied on by Mr. Grubbs, the evidence failed to show that any of the wife's money went into the purchase of the real estate. (91 Va. 46-47). And see *Smith* v. *Smith*, 200 Va. 77 (1958) at 81, commenting on the absence of proof that the wife's estate was used.

The present case differs. While Mrs. Grubbs cannot prove that any specific part of the $6,017.70 was in the money used to purchase the lot, the evidence is clear that the money used came from funds in which the $6,017.70 was put. Mr. Grubbs having commingled money in which she had an interest with his own money, her interest attached to the entire fund. *First National Bank* v. *Commercial Bank*, 163 Va. 162 (1934) at 174; 76 Am. Jur. 2d *Trusts*, sect. 259; *Federal Reserve Bank* v. *Peters*, 139 Va. 45 (1924) at 56.

While it can be argued, and is probably true, that her interest cannot exceed $3,008.85, as the entire amount of the fund kept at home is unknown in my view it is fair that she be considered to have one-half interest in the entire fund until $6,017.70 has been expended.

Consequently, in my view the rule in *Hudson* v. *Clark* applies, that is, he bought real estate with money in which she had a one-half interest, and a trust was created in her favor in the lot. Bogert on Trusts and Trustees, 2d ed., § 458, 460; 76 Am. Jur. 2d, *Trusts*, § 219; 89 C.J.S. *Trusts*, §§ 128, 132(b), 151(2). Whether the trust be termed a resulting trust or a constructive trust appears immaterial. (A resulting trust arises from a presumed intention which allots a beneficial ownership to some party other than one in whose name title is taken. *Salyer* v. *Salyer*, 216 Va. 521 (1975) at 526. A constructive trust is created by law, independent of the intention of the parties, where circumstances are such that it is unconscientious for the holder of legal title to retain the beneficial interest. (19 M.J. *Trusts*, § 48, 49).

William next contends that if any trust was created it had to be done at the time the lot was purchased and would attach only to the lot, not to the improvements. It is true that a resulting trust must arise at the time of the transaction and things occurring later are of no consequence. (9 M.J., *Trusts*, § 28). I have run across no authority applying a different rule to a constructive trust.

The interest Alice had in the unimproved lot was one-half, as she had a one-half interest in the money used to buy it. The rule is quoted in *Mumpower* v. *Castle*, 128 Va. 1 (1920) at page 19:

> where two or more persons together advance the price, and the title is taken in the name of one of them, a trust will result in favor of the other in an undivided share of the property proportioned to his share of the price. The doctrine in all its phases applies alike to personal and to real property.

To the same effect, see *Neathery* v. *Neathery*, 114 Va. 650 (1913) at 656; *Miller* v. *Miller*, 99 Va. 125 (1901) at 130-131. And in Bogert, Trusts and Trustees, § 457, at pages 562-563, the following rule appears:

> the great majority of American cases decree a resulting trust for the payor of part of

the price in a corresponding fractional interest in the property, without argument or comment on the size of the payment. They apply the presumption of trust intent to fractional payments, without apparently regarding that feature as at all peculiar.

Something a bit different is found in *319 East 72nd St. Corp.* v. *Wameche*, 244 N.Y.S. 2d 604, affirmed 196 N.E.2d 558. That is not close enough on facts to be of more than interest.

As Alice has a one-half interest in the lot, does she also have a one-half interest in the improvements? No authority directly on point has been found to this question.

*Miller* v. *Miller, supra,* improvements had been added by the person in whose favor the Court found a resulting trust, and he kept full title to the improvements. There the original acreage was dividable and that part of the case is not helpful here. Nor did the Court have to discuss ownership of the improvements.

In Bogert, Trusts and Trustees (2d ed.), the following statement appears at § 266, pages 49-50:

all property belonging to a trust . . . and all the fruit of such property, whether in its original or altered state, continues to be subject to or affected by the trust.

This right of the cestui is not that of a lienholder or a preferred creditor. It is based on a property right in the res or its substitute.

This gives to the one favored by a resulting trust the same interest in the increase in value of the property that he had at the time the trust was created, but does not really state the rule as to improvements added to the property.

In this case, the value of the improvements came to $15,842.76. Of this amount, $7,000.00 was borrowed on a joint note and the remaining $8,842.76 was paid in cash. As there is no evidence that any of the $6,017.70 was left after the house was paid for, a fair inference

that $4,804.20 of this amount (the balance left after purchase of the lot) went into the construction of the house and the remaining $4,038.56 came from funds of William Grubbs. As Alice had a one-half interest in the original $6,017.70, she also had a one-half interest in the $4,804.20 which went into construction. Thus, $2,402.10 of her cash went into construction of the house and the balance, $6,440.66, must have come from money belonging to William, his one-half interest in the $4,804.20 being included in the $6,440.66. Alice, then paid 27.2% of the cost of construction and William paid 72.8%.

As Alice was jointly obligated on the $7,000.00 note and as she worked during the marriage, I do not find that the fact that William paid the note gives him any greater interest in the cost of building the house.

Following the rule expressed in *Mumpower*, a trust in favor of Alice in an undivided share of the house to the extent of 27.2% would follow.

I am not aware of any equities which call for a variance from the proportion rule. Alice merely assumed that title to Ronnie Avenue would be in the joint names. She never inquired. He never misled her by any statements, though he did disappoint her by his actions.

In my view, Alice has a 50% interest in the present value of the lot and a 27.2% interest in the present value of the house on the lot.