# Richmond

## H. R. REESE v. THOMAS W. REESE.

April 25, 1955

Record No. 4347.

Present, Eggleston, Spratley, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Richard Newman*, for the appellant.

*Thomas W. Reese*, for himself.

MILLER, J., delivered the opinion of the court.

On October 10, 1952, Thomas W. Reese instituted suit against H. R. Reese, and sought partition of certain land in the city of Newport News, Virginia, and an accounting of rents and profits. The real estate consisted of adjoining lots Nos. 18 and 19, Block 11, plat of Newport News and Hampton, Old Point Development Company property, with the improvements situate upon lot 18 and known as 53 Buxton avenue.

It is alleged in the bill that Thomas W. Reese, appellee, H. R. Reese, appellant, and Mabel E. Griffin, the sons and daughter of Roxie E. and Harry Reese, had acquired the property under the will of their mother and that appellee, by purchase of his sister's share, now owns a two-thirds undivided interest, and appellant a one-third undivided interest in the land. It was also charged that appellant had occupied the premises for some time without paying rent.

In an answer and cross-bill filed October 29, 1952, appellant admitted that the vacant lot No. 19 had been owned by their mother at her death, and he did not deny that it had been acquired by her three children under her will and was owned in the proportions charged. He denied that Thomas W. Reese owned a two-thirds interest in lot 18, and stated that during her lifetime, Roxie E. Reese had purchased lot 18, but that he was now the full equitable owner of that par-

cel. He charged that by a written agreement executed April 18, 1919, his parents had agreed to sell to him, and he had agreed to purchase, lot 18 for the sum of $5,000 "which amount was paid on the date the said agreement was written * * * ."

The document relied upon follows:

It is also asserted in the cross-bill that until recently the agreement had been misplaced or lost and could not be proved, and for that reason, he, appellee, and their sister had treated the property as if it were equally owned by them when, in fact, and in equity, lot 18 actually belonged to him. While he admitted that he had occupied the property for some time, he asserted that the first floor had been rented out by Thomas W. Reese at times, and he had collected the rent from that apartment.

On January 7, 1953, a decree of reference was entered which contained the inquiries usually made in a partition

suit, and a named commissioner was directed to execute the decree and report to court.

After hearing the testimony of both litigants and that of several other witnesses at meetings held on February 5 and 6, 1953, and examining available records, the commissioner reported. He found taxes delinquent for several years and a judgment rendered October 29, 1952, in favor of Mabel E. Griffin against H. R. Reese for $1,000, with interest from April 4, 1944, which was reported as a lien on appellant's interest in the real estate. He also reported the market value of the property to be $6,000, and that Thomas W. Reese owned a two-thirds undivided interest, and H. R. Reese, a one-third undivided interest in the lots, which he found not susceptible of division in kind, and he recommended that they be sold to effect partition. As no agreement had been made between the parties for payment of rent, and as each had made repairs or expended money on the property, and had used or rented out parts of the premises at times since their mother's death, he concluded that the evidence was insufficient to prove that either claimant was entitled to recover for any repairs, use or rents collected.

The commissioner's report upon appellant's claim that he was the full equitable owner of lot 18 was that H. R. Reese had acquired no interest in the property under the instrument of April 18, 1919.

Exceptions taken by H. R. Reese to the report were that the commissioner erroneously failed to give effect to the writing of April 18, 1919, and find that he was the equitable owner of lot 18; wrongfully refused to allow appellant to attack the validity of the judgment obtained against him by Mabel E. Griffin, and wrongfully disallowed appellant's claim of about $1,000 for expenditures allegedly made by him to improve, repair and conserve the property.

Before entry of a decree upon the report and exceptions, appellant filed a petition in the cause and asserted that a misunderstanding had occurred at the hearings between the litigants, their counsel and the commissioner, and as a result

he had been denied opportunity to present certain documents bearing upon his claim for repairs. He prayed that the cause be recommitted and that he be allowed to present these documents in evidence. To the refusal of the chancellor to recommit the cause to the commissioner appellant now assigns error.

Though the hearings before the commissioner were held on February 5 and 6, 1953, and the report was not filed until October 16, 1953, the record does not disclose that during this interval appellant ever claimed that a misunderstanding had occurred or requested the commissioner that he be allowed to present any additional evidence.

The proceedings had before the commissioner disclose that on February 5th appellant's counsel asked him if he had "any receipts or vouchers to bear out his claim for expenditures" of around $1,000 for repairs. Appellant replied that he did but that they were out at his house on Buxton avenue. Then this question and answer follow:

"Q. You did not bring them over here with you today?
"A. No."

On resumption of his examination the next day, he was asked if he brought "his vouchers, receipts and things to establish" his claim, and he answered that he had not and said: "I didn't know that you wanted them." These questions and answers then appear:

"Q. I thought we told you to bring them?
"A. You asked me if I had them.
"Q. You didn't bring them today?
"A. No. Maybe—
"Q. Is your wife familiar with those vouchers?

*        *        *        *        *        *        *

"A. In a way she's familiar with them, yes.
"Q. All right, sir. * * *"

There the examination on that subject ended.

Not the slightest intimation appears in the record that any suggestion was ever made to the commissioner or anyone else that a continuance was expected or desired for further op-

portunity to present these alleged documents and vouchers.

It is obvious that the chancellor did not abuse his discretion when he declined to recommit the cause to the commissioner for introduction of these alleged documents and vouchers. He was fully justified in refusing this belated request. 53 Am. Jur., Trial, § 123, p. 109.

We also agree with the commissioner and the court that appellant's claim to about $1,000 for making repairs and improvements was not sustained by the evidence.

■ Appellant's assignment of error that the court should have sustained his exception and decreed that he was the full equitable owner of lot 18 requires that the evidence bearing upon that claim be set out at some length.

The writing of April 18, 1919, is yellow, worn, and disintegrated at places, and its appearance is such as to lead one to believe that it may well have been typed and signed many years ago.

Lot 18, with the residence thereon, was conveyed to appellant's father, Harry Reese, sometime during the year 1910, and he acquired lot 19 subsequent to April, 1919. He and his family occupied these premises as their residence until serious marital differences arose between Harry Reese and his wife. These differences resulted in a divorce suit being instituted by the wife, and both parties claimed ownership of the property. After extended litigation, Roxie R. Reese was awarded a divorce in 1925, and it was also then decreed that she was entitled to the property, and Harry Reese was ordered to make conveyance to her. This he declined to do, and he was imprisoned for contempt of court until he executed a deed dated December 14, 1925, conveying lots 18 and 19 to her. In the papers of this protracted litigation no reference is made by either party to the instrument of April 18, 1919. Though Harry Reese suffered imprisonment for several weeks and until he executed the deed, it does not appear that it was ever brought to the attention of the court that he and Roxie E. Reese had executed an instrument, which, if valid, vested their son with the equitable ownership of the property.

The testimony of H. R. Reese, who was slightly over twenty-one years of age in April 1919, was that he purchased lot 18 from his mother and father and that he gave them $5,000 or consideration of that value for the property. He did not know who prepared the instrument, but said he saw his parents sign it just before it was delivered to him. After its execution he said it was lost or misplaced and not located until about two years ago when he found it in some papers in the attic at 53 Buxton avenue. He further testified that for a period of two years or more from September, 1917, he was a student at the University of Maryland and for a part of that time, enrolled in the ROTC. In explaining how he obtained $5,000 with which to purchase the property, he stated that while a student in Maryland, he operated two cabs in Newport News, one of which he drove when at home during the holidays and the other he "hired a fellow to drive—to drive them while I was in school." But he said he "went out of the taxi business when the war was over."

Upon being asked who occupied the residence after his mother's death in October, 1942, he stated that it was rented out for sometime and the rent was divided among the three children. After the tenant vacated the premises, part of it was occupied by him for sometime, and part rented out by appellee. In testifying about the repairs that were put upon the house, he acknowledged that about $2,200 was borrowed on notes jointly executed by him, appellee and Mabel E. Griffin, and expended in repairs, but he claimed that he expended about $1,000 in repairs in addition to that sum.

On cross-examination he admitted that while attending the University of Maryland, he received money from his parents to defray his expenses, yet he asserted that while attending the University he operated the taxicabs for a year and a half or two years and made approximately $80 a day in that undertaking. When questioned about when and how he paid the $5,000 to his parents, he was noncommittal and evasive. He said that he may have paid some of it by cash and some of it by checks, but he did not remember over what period of

time it was paid or whether or not all was paid at once as stated in his cross-bill. Although having said that some was paid by checks, he finally admitted that he did not remember whether or not he kept a bank account at that time. He asserted that the paper had been lost or misplaced before his mother died, but admitted that during her lifetime he never asked her for any deed or other writing or evidence to establish his payment of the purchase price or his rights to the property. From his testimony it is plain that he had not mentioned the existence of the paper to his father, brother or sister until about a year and a half prior to the institution of the partition suit and that was when his brother had become insistent that some division of the property be made.

The testimony of Thomas W. Reese and Mabel E. Griffin bearing upon the ownership of the property was to the effect that ever since the death of their mother and the probate of her will, which left all of her real estate to her three children, all of them had dealt with the property as though each owned a one-third interest. In confirmation of this, they said that appellant had at one time executed a deed of trust on his one-third interest to secure money borrowed from his sister; that when it was necessary to repair the property, all three of them executed notes totalling $2,200, and the money obtained was used to improve the property with the understanding that each of the three was to pay one-third of the indebtedness and that the income collected from renting the property was to be equally divided among the three. Thomas W. Reese further testified that when appellant occupied a part of the residence, he declined to pay rent because "He said he was living in his third." He emphatically denied that appellant had operated a taxicab other than for a few days during one summer and·pointed out that appellant was away at the University of Maryland and supported by his parents during the time he claimed to be engaged in this lucrative business.

Harry Reese, father of the litigants, testified and denied that he and Roxie E. Reese sold the premises to appellant or that he and his former wife received the sum of $5,000, or

any part thereof, from appellant. He said that the writing was first shown to him by his son about a year and a half before the hearing and that he then denied that he had executed it or that the signature was his. At the hearing before the commissioner, he examined the paper, denied the signature and thus expressed his doubt that the other signature was that of Roxie E. Reese:

"Q. Is that her signature?

"A.. I don't think so.

"Q. You don't think it is her signature?

"A. And this ain't mine. I know this ain't mine because it ain't got the 'H' right.

"Q. The 'H' is wrong?

"A. Yes, sir.

"Q. You don't think it is your writing at all?

"A. No, sir, it ain't my writing at all.

"Q. And you don't think it is your wife's writing?

"A. No.'

He also testified that he furnished his son money to attend the University of Maryland and paid the expenses incident to his education.

Other evidence before the commissioner showed that on December 16, 1943, appellant conveyed his interest in lots 18 and 19 to a trustee to secure an indebtedness and in the deed described the property granted as the same property conveyed to H. R. Reese, Thomas W. Reese and Mabel E. Griffin in the will of their mother.

The report of the commissioner was not entitled to the same weight as the verdict of a jury returned upon conflicting evidence. Section 8-250, Code of 1950. However, it is based upon testimony heard in his presence and his factual finding was entitled to much weight, and it was rightly sustained by the chancellor unless unsupported by the evidence. *Mitchell* v. *Cox*, 189 Va. 236, at 243, 52 S. E. (2d) 105.

"The conclusion of the commissioner should not be upset unless upon a fair and full review according to correct principles of law, it appears that the weight of the evidence is

contrary to his finding." *Leckie* v. *Lynchburg Trust and Savings Bank, etc.*, 191 Va. 360, at 364, 60 S. E. (2d) 923.

The commissioner might well have concluded that the signature of Harry Reese was a forgery, and that grave doubt was cast upon the genuineness of the signature of Roxie E. Reese. But whether or not she actually signed this instrument is of little importance for the evidence fully justifies the belief that neither the $5,000 nor any part thereof, was ever paid by appellant to his parents, and that neither he nor his mother intended or expected this instrument to have any legal efficacy.

The preponderance of the evidence strongly tends to establish the fact that appellant did not earn anything of moment from the operation of taxicabs and that he was without funds and supported by his parents at the time he claims that he paid for the property with money derived from the taxicab business. In addition to that pertinent evidence, appellant's acts, conduct and declarations refute and discredit his claims. Throughout the twenty years and more that elapsed between April 18, 1919, and his mother's death, during which time he claims the instrument had been lost, he never sought to have it re-executed. For about ten years subsequent to her death, by conduct and declarations he repeatedly recognized the two-thirds ownership of his brother and sister in the property and allowed them to incur obligations for its repair and up-keep without mention of this instrument or assertion of ownership to more than one-third interest in the property. It was only when his brother became insistent that a division be made that appellant conveniently remembered the document.

Not only is the evidence sufficient to support the commissioner's finding but it quite clearly establishes that whatever was the purpose for drafting the writing in question and however the names of appellant's parents became affixed thereto, neither appellant nor his parents ever intended that the instrument have any legal efficacy or operate as an equitable conveyance of the property.

At the hearing before the commissioner, counsel for

H. R. Reese sought to attack the validity of the judgment secured by Mabel E. Griffin. He asserted that appellant was in New York or Kentucky when the judgment was rendered, intimated that the service of process was invalid and suggested that the commissioner allow him to acquaint the officer who made the service and return "with the facts in the case" and have the return corrected. The commissioner declined to allow counsel to question or seek an amendment of the officer's return and ruled that he did not have that authority and that the judgment was not subject to collateral attack in the pending cause.

How the process was served on H. R. Reese or what return the officer made in the action brought by Mabel E. Griffin against appellant in which the $1,000 judgment was rendered is not disclosed. He may have made service upon a member of appellant's family or by posting the process, but howsoever it was made, the officer's service and return could not be questioned or amended in this suit, and the commissioner properly refused to allow a collateral attack upon the judgment. *Childress* v. *Fidelity & Casualty Co.*, 194 Va. 191, 72 S. E. (2d) 349, 35 A. L. R. (2d) 1. 11 Am. Jur., Judgments and Decrees, §§ 140, 141, p. 177; 31 Am. Jur., Judgments, §§ 576, 598, pp. 175, 195.

We find no error in the decree appealed from, and it is affirmed.

*Affirmed.*