## Staunton

MARIE T. SHEPHEARD, ET AL. v. CHARLES E. BOGGS, JR., ET AL.

September 4, 1956.

Record No. 4539.

Present, All the Justices.

The opinion states the case.

*George H. Gray*, for the appellants.

*Eastwood D. Herbert* (*Gordon E. Campbell, Herbert & Bohannon*, on brief), for the appellees.

WHITTLE, J., delivered the opinion of the court.

The case before us as developed in the court below is limited to a question involving the riparian rights of certain owners of lots bor-

dering on Lafayette river in an exclusive residential development known as "Riverpoint" in the City of Norfolk.

Marie T. Shepheard and nine other lot owners (hereinafter sometimes called Shepheard, et al.) filed their bill against Charles E. Boggs, Jr., and Florence J. Boggs (hereinafter sometimes called the Boggses), owners of lot 4, block 12, in the subdivision.

The bill asserted that riparian rights were appurtenant to each of the lots owned by the parties to the litigation and alleged (1) that the Boggses had constructed a dam extending from the rear of their property into the Lafayette river, interfering with complainants' riparian rights; (2) that they were carrying on noxious or offensive activities upon their property in violation of the applicable restrictive covenants; and (3) that they had constructed a pier into the river from the dam or neck of land without the approval required by the covenants.

The prayers of the bill were for injunctive relief requiring the Boggses to remove the alleged earthen dam and the pier, and to cease using their property in a manner offensive to complainants.

An amendment to the original bill asserted that the dam had been constructed in an area reserved by the Riverpoint Corporation, the developers of the subdivision, as a boat basin. It contained the same prayers as the original bill.

A receiver was appointed for the defunct Riverpoint Corporation and filed an answer joining in the prayers of the bill.

The Boggses' answer asserted that they had built the pier and had lawfully improved the neck of land extending into the river from the rear of their lot which they had a right to do as riparian owners. It denied that the area designated on the subdivision as a boat basin had been reserved by the developers, Riverpoint Corporation, as such, and denied that they were using their property in a manner offensive to complainants.

The cause was referred to a commissioner in chancery who was required to determine certain questions posed in the decree of reference. The commissioner conducted hearings and took evidence upon the issues joined. In the course of these hearings counsel for Shepheard, et al. abandoned their position that the Boggses should be required to *remove* the "earthen dam" or neck of land, but insisted that they be required to restore the property to the condition in which it was at the time they purchased their lot, thus giving Shepheard, et al. access to the Lafayette river.

The commissioner reported on the issues as follows:

1. That Shepheard, et al. were entitled to no relief as to the alleged "offensive activities" as there was no evidence to sustain the allegation; nor were they entitled to the requested relief that the pier be removed;

2. That the Boggses could lawfully improve the neck of land extending from the rear of their lot, by reason of the riparian rights contained in their deed, but in so doing they could not obstruct any existing riparian rights to which Shepheard, et al. were entitled;

3. That the Boggses, in improving the neck of land, had filled with broken concrete, asphalt and brick bats and had completely blocked a small stream or "gut" that ran between the bluff line of the lot and the neck of land jutting out into the river, depriving Shepheard, et al. of their riparian rights.

The commissioner recommended that the Boggses, at their own cost and expense, be put upon terms and required to remove so much of the described debris from the stream or gut as to allow full and free access by water to the respective lots. This was the extent of the relief recommended for Shepheard, et al. However, it was recommended that the costs of the litigation be taxed equally between the parties.

Exceptions were taken to the report by all parties. The Boggses excepted to the finding that they had filled and blocked the small stream or gut and should be required to remove the debris therefrom, and further excepted to the recommendation that they be required to pay any part of the costs. The exceptions of Shepheard, et al. were directed to the other findings of the commissioner.

The trial court, after hearing argument on the exceptions, entered a decree sustaining the exceptions of the Boggses and dismissing the bill, taxing all costs against Shepheard, et al. To the entry of this decree we granted an appeal.

In argument before us Shepheard, et al. apparently abandoned all claims except that involving the blockage of the stream or gut at the rear of the Boggs lot. Therefore the question is narrowed to the issue: What is the rear boundary line of the Boggs lot?

Shepheard, et al. contend that the court erred in failing to decree that the rear boundary line of the Boggs property, as well as the rear boundary line of the respective lots owned by them, is the bulkhead line. In the alternative they argue that if the court did not err in failing to find that the bulkhead line is the limit of the lots then it did err "in failing to sustain and confirm the finding of fact of the

commissioner * * * that (the) low water mark at the rear of said lot 4, in block 12, plat of Riverpoint, is marked by the small stream or watercourse that ran along the bluff and bulkhead line at the rear of said lot 4", which accorded them access to the river.

With the latter assertion we are in accord. In those parts of the commissioner's report here applicable, he found that in 1946, four years prior to the acquisition of lot 4, block 12, by the Boggses, some of the appellants (Shepheard, et al.), one of whom at the time owned the lot now owned by the Boggses, formulated a plan to dredge out the area shown on the plat marked "reserved for boat basin". This dredging operation was done on the theory that it would prove mutually advantageous to the owners of property bordering on the basin.

The dredging project, says the commissioner, proved a failure. It developed that the material was of such a fluid quality that it would not remain upon the embankment, "its consistency was such that it silted and ran back into the waterways from which it was taken". The report further stated that "it was found that the only places upon which it could be deposited were the more or less submerged sand bars with solid bases running into the water from lots 3 and 4, block 12, * * *. Upon these bars or foundation the dredged material was placed, as high and as wide as they would hold it. Subsequent to the dredging operation which failed so disastrously, the defendants (the Boggses) by the aforesaid deed dated September 7, 1950, acquired title to lot 4 block 12, which is the property concerned in this controversy."

The commissioner further found that at the time the Boggses acquired their lot its physical condition showed it to be a "high lot", running back between diverging lines to the bulkhead of Lafayette river. The water end of the lot sloped down to the water from a bluff line, at the bottom of which slope was a marsh. The commissioner states that "the condition of the marsh at both high and low water is most important and unfortunately most conflicting"; that it showed a solid ridge of sand, covered at high tide "but in the main though not entirely, exposed at low water"; that this was the ridge upon which the owners of the property prior to the Boggses' acquisition of lot 4 had dumped the dredging material which extended some 20 feet in height.

The commissioner grouped inquiries 3, 4, 5 and 6 of the decree of reference and reported upon them as a whole. Briefly, these inquiries

were: (3) Did the Boggses construct an earthen dam extending from their property into the boat basin or into Lafayette river, if so (4) has such dam deprived Shepheard, et al. of or interfered with riparian rights appurtenant to their property; (5) has such dam caused Shepheard, et al. irreparable injury; and (6) whether, by reason of their own riparian rights the Boggses could lawfully build up the point extending into the boat basin or river.

The commissioner stated that these four questions "embrace the essence of this litigation". He then proceeded to make an extensive report in which he found: That an earthen mound had been constructed from the rear of the Boggs property into Lafayette river; that the undisputed facts disclosed that the Boggses, using the sloping ridge of sand at the rear of their property, proceeded to level off the dredging material 20 feet in height, and by doing so did not extend the mound any further into the river, nor was it extended in width by the leveling process; that the leveling process did, however, fill and completely block the small stream or gut running between the actual bluff line of the Boggs property and the sand ridge and marsh jutting out into the river; that while this did not cause irreparable injury, it did work a hardship and in equity should be dealt with.

The report further stated that it was undisputed that the Boggses had hauled only fifty loads of "broken concrete, asphalt and brick bats", placing the material around the embankment to prevent erosion; that a part of the described materials had been dumped into the stream (the low water mark of the lot), "further obstructing the gut or stream between the bottom of the bluff and the marsh and sand ridge", thus interfering with the riparian rights of Shepheard, et al. "to the extent that the gut or stream * * * has been completely filled and blocked up".

The commissioner found that by reason of the Boggses' riparian rights they could lawfully build up the point extending into the river so long as they did not fill the water course which was determined to be the low water mark and thus the boundary to the Boggs lot.

In treating inquiry #9, which dealt with the relief to be accorded Shepheard, et al., the commissioner reported that the weakness of the position of Shepheard, et al. was that the condition now bitterly complained of was in fact largely caused by their dredging operation heretofore referred to. It was recommended, however, that their rights be not abridged or denied on this account as the dredging

process did not cause the trouble complained of, which he says was caused by the Boggses filling and blocking the water course at the rear of their lot.

In substance the commissioner held that it would be highly inequitable to require the Boggses to remove the entire embankment which was largely created by Shepheard, et al. He recommended, however, that they be required, at their own cost and expense, to remove so much of the fill material as would allow full and free access by water to the respective lots of Shepheard, et al., thus restoring the physical condition of the property as it existed at the time of the Boggs purchase.

The effect of the commissioner's findings was to determine that the rear of the Boggs lot was the low water mark (the gut or stream) rather than the bulkhead line. This finding was based upon evidence developed before the commissioner who saw and heard the witnesses, and while the evidence regarding the waterfront boundary of the lot is conflicting, there was ample evidence upon which the commissioner could base the finding that the stream near the base of the bulkhead was the low water mark bordering the property in question and thus the rear (water) line of the Boggs property. § 62-2, Code of Virginia, 1950; *Groner v. Foster*, 94 Va. 650, 27 S. E. 493; *Cardovana, et al. v. Vipond, et al.*, 198 Va. 353, 94 S. E. 2d 295, this day decided; Farnham on Water and Water Rights, Vol. 3, § 723(a), p. 2192.

The commissioner's report recommended that the Boggses should be "required to entirely remove all of the fill, both the dredged substance and the additional material that has been placed at the rear end of their lot line between the bottom of the bluff and bulkhead line and the former marsh and sand ridge", thus opening the channel as it existed at the time they acquired the lot, giving Shepheard, et al. free access to the river.

While § 8-250, Code of Virginia, 1950, provides: "The report of a commissioner in chancery shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject such report in whole or in part, according to the view which it entertains of the law and the evidence", we have frequently held that although the trial court is given broad power of review over the findings of a commissioner in chancery, the court cannot arbitrarily disturb the report where dealing with factual matters if the report is supported by sufficient proof. The conclusions of a commissioner

should not be upset unless, upon a fair and full review, it appears that the weight of the evidence is contrary to his findings. *Leckie v. Lynchburg Trust, Etc., Bank,* 191 Va. 360, 364, 60 S. E. 2d 923, 925; *Reese* v. *Reese,* 196 Va. 1028, 1036, 1037, 87 S. E. 2d 133, 138; 16 M. J., Reference and Commissioners, § 33, pp. 29, 30, 31 (16 M. J., 1956 Cum. Supp., § 33, p. 6.)

The Boggses argue in their brief that to require them to reopen the "gut" near the shore line of their lot "would serve no useful purpose, for the neck of the land now located where the gut allegedly ran is partly on the property of Charles Gerloff, owner of lot 3, and partly on the property of Boggs, lot 4. For Boggs to cut a ditch through his portion would not give the appellants access to the river, for it would come to a dead end at the Gerloff line." We are not impressed with this argument. Suffice it to say that Shepheard, et al. contend that prior to the Boggses' described interference they had access to the river through this inlet, and the commissioner, from the evidence, found this to be true. Shepheard, et al. are therefore entitled to have the inlet restored to their use as it existed at the time of the Boggs purchase.

We are of the opinion that the court erred in overruling that part of the commissioner's report which would require the Boggses to remove the debris placed by them in the channel or stream. Therefore, to this extent the decree of the trial court is reversed and the case remanded for the entry of a decree in conformity with these views. Shepheard, et al. having substantially prevailed in the litigation, the costs shall be taxed to the Boggses. In other respects the decree is affirmed.

*Affirmed in part; reversed in part and remanded.*