# Richmond

FRANCES KLOTZ v. ALEX KLOTZ.

January 16, 1961.

Record No. 5169.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Edmund D. Campbell* (*Griffin T. Garnett, Jr.*, on brief), for the appellant.

*William J. Gibson* (*Coleman & Gibson*, on brief), for the appellee.

Buchanan, J., delivered the opinion of the court.

Alex Klotz, the appellee, herein referred to as plaintiff, filed his bill in equity in May, 1958, against his wife, Frances Klotz, the appellant, referred to herein as defendant, in which he alleged that he and his wife had entered into a partnership agreement for the operation of a junk business in the city of Fredericksburg; that marital difficulties had since arisen between them resulting in their separation, and making it impossible for him properly to operate the business of the partnership; that he had been unable to agree with her upon a satisfactory division of their properties or a reasonable support and maintenance for her. He prayed that the partnership be dissolved, the property rights of the parties be adjudicated, and that the court fix the proper amount to be paid by him for her maintenance and support.

The defendant filed her answer, following which the court ordered that the matter of the dissolution of the partnership be heard separately from the question of maintenance and support, and on the same day, June 16, 1958, entered an order dissolving the partnership as of June 7, 1958, by agreement of the parties, and adjudicating that as of said date the plaintiff should be the owner of all the partnership assets, assume all of its liabilities, and pay to the defendant the amount determined to be due her upon adjudication of her interest.

It was further ordered that Adam A. Weschler and Sons inventory and appraise as of June 8, 1958, all of the tangible personal assets of the partnership, "which appraisal values shall be binding upon the parties hereto; provided that either party shall have the right to question the valuation of specific assets in the event of ascertainable mistakes". It was further ordered that the plaintiff pay to the defendant interest at 5% from June 7, 1958, upon her interest in the partnership, including real estate as adjudicated by the court, and that the plaintiff might pay defendant for her interest in the partnership real estate by conveying to her other real estate owned by him at values adjudicated by the court. The cause was then referred to a commissioner in chancery to take evidence and report to the court "the respective property interests, rights and liabilities in the partnership."

Adam A. Weschler and Son, Inc., referred to in the June 16 order as "Adam A. Weschler and Sons", made and certified the appraisal directed by said order and reported the value of the "Stock in trade" to be $78,667.90, and of "Trucks and equipment" to be $43,827.50.

The commissioner heard testimony from witnesses for both parties with respect to contested matters.

The value of the real estate belonging to the partnership was independently appraised and the parties agreed before the commissioner to the appraised values, totaling $217,500. However, by mistake in addition the commissioner reported this total at $207,500, concededly an error but not corrected in the decree dealing with the exceptions to the commissioner's report.

The commissioner reduced the Weschler appraisal of stock in trade from $78,667.90 to $55,067.53, and the Weschler appraisal of equipment from $43,827.50 to $30,776, assigning the reasons later referred to.

In addition to the real and tangible personal property of the partnership so reported on by the commissioner, he made report also as to a method of dividing the capital assets of the partnership. He observed there was no dispute between the parties that under the terms of the partnership agreement upon dissolution of the partnership one-third of its capital should belong to the defendant and two-thirds to the plaintiff; but the question was as to the treatment of the undivided profits left in the partnership over the years, the defendant contending that these monies were put into the partnership as additional investments, thus forming part of the partnership capital. But, said the commissioner, the evidence showed that said funds were not made the subject of any specific agreement between the parties, therefore under the terms of the partnership agreement they could not be considered as additional investments. The commissioner then recommended that counsel or court review the audits of the partnership accounts made by A. M. Pullen & Co., included in the exhibits, to determine as nearly as possible the net profits not actually withdrawn as salary by either party and credit the partners with the amount due them solely on the basis of undistributed net profits.

By a decree entered May 1, 1959, the matter was again referred to the commissioner with direction to take and submit to the court a financial computation of his findings, with authority to employ an independent accounting firm to assist him in such computation. An accounting firm employed by the commissioner submitted a report which included a "Balance Sheet" and a "Statement of Partners' Capital". The balance sheet on the assets side included the real estate and stock and equipment at the valuations shown in the commissioner's first report, as noted above, making the total partnership

assets $300,564.10. It also showed current liabilities of $34,143.52, and a partnership capital of $266,420.58 to balance with the assets, which latter amount was then distributed $226,266.01 to the plaintiff and $40,154.57 to the defendant. The commissioner filed a supplementary report making this report of the accountants a part thereof as being "consistent with the findings of your Commissioner as to the equities and values in controversy".

The defendant filed five exceptions to the report and supplemental report of the commissioner, all of which the court overruled save four items in one exception totaling $11,613.34, which was added to the $40,154.57 reported by the commissioner to be the share of the defendant in the partnership assets, and the decree appealed from was accordingly entered adjudging the defendant's share of the partnership assets to be $51,768.

The defendant filed nine assignments of error to the decree, which related to the valuation of the partnership personal assets and to the defendant's distributive share.

The plaintiff filed cross-error with respect to two of the items, one of $2,100 and the other of $6,385, added by the court to the distributive share of the defendant as determined by the commissioner.

The defendant contends, first, that the trial court erred in its valuation of the partnership assets, and in failing to decree one-third of the true assets to the defendant in accordance with the partnership agreement.

As noted above, the partnership capital was reported by the commissioner in his supplemental report as $266,420.58. This amount was determined on a basis of $207,500 for the partnership real estate; an inventory value of $55,067.53 found by the commissioner instead of the Weschler appraisal of $78,667.90; and on an equipment valuation of $30,776, as found by the commissioner instead of the Weschler appraisal of $43,827.50. The defendant has abandoned her assignment with respect to the commissioner's valuation of the equipment, stating that it involved consideration of confused and conflicting testimony "as to which the findings of the commissioner and trial court are entitled to great weight". (See *Hoffecker* v. *Hoffecker*, 200 Va. 119, 104 S. E. 2d 771; Code 1950, § 8-250.)

But the defendant insists that the commissioner and court erred in reducing the valuation of the stock in trade from $78,667.90, as appraised by Weschler, to $55,067.53 found by the commissioner, and that the difference, amounting to $23,600.37, should also be

added to the partnership assets, making, together with the $10,000 undervaluation of the real estate, a total partnership capital of $300,020.95, of which the defendant is entitled to one-third under the partnership agreement, or $100,006.98 instead of the $51,768 allowed by the court.

Defendant cites the provision of the June 16 order of the court which provided that the appraisal to be made by Weschler should be binding upon the parties, subject only to the right of either party "to question the valuation of specific assets in the event of ascertainable mistakes". She argues that the difference between the Weschler values and those fixed by the plaintiff's witnesses are matters of opinion, not matters of "ascertainable mistakes". The commissioner took the view that mistakes in valuation, as well as in the kind and quality of the items valued, were included in "ascertainable mistakes". The trial court accepted that interpretation of its own order; it is in aid of obtaining a fair result and should not now be rejected.

The disputes over the Weschler valuations involved not only the worth of a multitude of items of stock and equipment, but also whether a great number of items should be classified as usable in kind or only as scrap. On these questions the commissioner heard the testimony of Weschler's president and secretary on the one hand, and on the other the testimony of Schein, an experienced scrap dealer; the testimony of Klotz; and the commissioner himself with counsel spent considerable time in viewing the equipment and materials at the junk yard. The differences in values were extreme in many cases. For example, a lot of baled scrap valued by Weschler at $7,000 was valued by Schein at $2,500, and a truck which Schein claimed was scrap and worth only $10 was valued by Weschler at $550. However, it definitely appears from the evidence that Weschler placed his valuation of the scrap on its worth at the junk yard instead of its sale price at a mill where it could be marketed, and therefore the Weschler appraisal ignored a 30% transportation cost for such material. The commissioner applied this differential to the scrap inventory and concluded from the evidence that a like differential should be applied to cover the items appraised by Weschler as usable which should have been valued as scrap. There was credible evidence to support the commissioner's finding. His report in that respect was approved by the trial court and must now be sustained. *Lohman* v. *Sherwood*, 181 Va. 594, 26 S. E. 2d 74; *Shepheard* v. *Boggs*, 198 Va. 299, 94 S. E. 2d 300.

■ The $10,000 conceded error in the valuation of the real estate when added to the partnership capital of $266,420.58, found by the commissioner in his supplemental report, makes $276,420.58 of total partnership capital to be distributed between the partners.

The plaintiff filed with his bill a copy of the partnership agreement between him and his wife effective August 1, 1946, the original of which is in evidence. The paragraphs thereof material to the issue of distribution of partnership assets, directly quoted or stated in substance, are copied in the margin.*

---

* 4. "The capital of the partnership shall consist of the capital used in the business and contributed to the partnership by ALEX KLOTZ on August 1, 1946, (which partnership capital was contributed one hundred per cent (100%) by ALEX KLOTZ) plus such additional contributions of capital hereinafter made by each of the partners, in the proportion from time to time agreed on by the partners, whether new money is paid in or the profits, or a portion thereof, of the partnership determined to be necessary for the business and affairs of the partnership and agreed by all of the partners to remain in the assets of the partnership until additional partnership funds shall have been paid into or permitted to remain in the partnership. *The interest in the capital in the partnership in event of dissolution thereof, shall be on the basis of sixty-six and two-thirds per cent (66 2/3%) thereof to ALEX KLOTZ, and thirty-three and one-third per cent (33 1/3%) thereof to FRANCES KLOTZ.*" (Italics added)

7. Each partner shall receive a salary or drawing account as from time to time mutually agreed on, before any profits are divided between the partners, and until otherwise changed this amount shall be $100 a week for Alex Klotz and $50 a week for Frances Klotz. All remaining net profits or net income of the partnership "determined for each fiscal period in accordance with sound principles of accounting," to be divided between the partners on the basis of 66 2/3% to Alex Klotz and 33 1/3% to Frances Klotz.

"When the partners shall determine that a portion of the net profits of any year, or period, distributable in the proportions herein set forth, or as otherwise changed hereafter by the partners to each of the partners, is needed as additional working capital for the partnership, and all the parties hereto agree, such amount shall be permitted to remain in the partnership and become a part of the capital of the partnership, and the balance of net profits, if any, over and above such amount will be available for withdrawal by the partners in the proportions of the distributive share of each. Where the partners shall all agree that one or more partners may leave in the partnership a portion of his distributive share of the net profits differing in proportion from that hereinbefore set forth, such amount so left with the partnership shall be considered as borrowed money, and the partnership, shall, until otherwise changed by unanimous action of the partners, allow interest to accrue thereon at the rate of three per cent (3%) per annum, which amount shall be payable by the partnership as and when and upon such notice as the partners from time to time shall agree. In event of liquidation of the partnership, amounts loaned by any one of the partners under this paragraph shall be paid, together with any interest thereon, before any distribution of capital shall be made to the partners."

8. "The partners shall cause the books of the partnership to be kept in accordance with sound accounting principles and to be closed annually at the end of each fiscal period of the partnership and a statement of the business and affairs of the partnership furnished to each of the partners as soon after such closing date as shall be

Pursuant to Paragraph 8, A. M. Pullen & Co., certified public accountants, were employed to keep the books and to make annual audits of the partnership accounts. Copies of these annual audits running from 1947 through 1957 are in evidence. The audit for fiscal 1947 shows assets of $80,866.63, less "Partner's loan account" $17,220.07, for a net worth of $63,646.56, represented by "A. R. Klotz—capital . . . $31,846.26" and "Frances Klotz—capital . . . $31,800.30". The 1948 audit carried a partner's loan account item of $32,864.82; but in the 1949 audit this loan account item was taken out and it with additional funds, aggregating together $49,876. 01, put into the capital account as "Additional investment". As testified by the auditor representing the Pullen firm, there was no partners' loan account shown in any of the audits following 1949, and for each of those following years the additional money that went into the partnership, whether advanced by a partner or from undistributed profits, was shown as additional investment. While he said this was for reporting purposes, he conceded it was for the purpose of the annual audits and he assumed a similar practice was followed with respect to the federal income tax information returns. The total of these additional investment entries from 1949 through 1957 (not including 1953, which is missing from the exhibits) is $137,999.37.

It is true, as said by the commissioner, that these additional investment funds were not made the subject of any specific agreement between the partners; but it is equally true that there was no specific agreement that any of these funds be treated as loans, as also required by the same Paragraph 7 of the partnership agreement. While there was never any specific agreement between the parties as to these funds, such an agreement is definitely to be implied from the manner in which the partnership was operated as described by the plaintiff.

The plaintiff testified that he ran the business as a sole partnership to suit himself; that it was his business and the partnership did not amount to anything to him; that the bookkeeper took his instructions from him and that the items charged to the defendant were just what he wanted to charge against her when he felt like it; that he had wanted to get rid of his wife as a partner since the day he formed the

reasonably practical and convenient, and the partners may cause the books to be closed and statements drawn off at such other time or times as they shall from time to time determine."

10. "In event of complete dissolution of the partnership, each partner shall be entitled to his pro rata of the net capital of the partnership in addition to his pro rata share of the then undistributed earnings, if any."

partnership. Asked whether he understood the annual reports of the auditors, he replied, "I wouldn't understand them a hundred per cent, but I figured pretty close to it. * * I would say I left it to the Pullen Company to make out the report correctly; whatever they done I was satisfied with". He said that the item of additional investment in the 1949 audit probably should have been a loan. Asked whether he gave any instruction as to what was to be done with this money, his reply was, "Well, I figured right off the start that all the money I would put back in the business would be a loan and eventually, through a period of time, I would get it back". He discussed none of this with his wife. She knew nothing of bookkeeping, and was not familiar with the annual audits, but trusted her husband, she said, to do what was fair.

From a small beginning this partnership grew steadily into a prosperous enterprise. While the husband was the dominant figure, the evidence shows no complaint from him through the years that his wife failed to perform the obligation which both parties assumed by the express terms of the contract to "diligently employ himself in the business of the partnership and carry on the same for the greatest advantage of all of the partners". Until the difficulties arose a short time before the plaintiff brought this suit, apparently he and his wife lived and worked together in harmony and happily, and he seems to have dealt generously with her. That attitude has changed and he now wants to undo some of the things done by him in a gentler mood.

However, the obligations of a business contract deliberately and fairly made between husband and wife are binding on them in the same manner as contractual obligations assumed by other contracting parties. Cf. *Smiley* v. *Smiley's Adm'x*, 112 Va. 490, 71 S. E. 532. They may not be disregarded by one against the will of the other. Nor may their terms be changed at the whim or caprice of one of the parties, or by courts on a theory that different terms would now be more equitable. The relationship of partners is of a fiduciary character and imposes upon them the obligation to exercise good faith and integrity in their dealings with one another in the partnership affairs. Each should guard the interests of the other equally with his own and make a frank and fair disclosure of all material facts. 40 Am. Jur., Partnership, § 128, p. 217; *Klingstein* v. *Eagle*, 193 Va. 350, 359, 68 S. E. 2d 547, 552; Code 1950, § 50-21.

Under the partnership contract the defendant is entitled to one-third of the capital of the partnership. In his supplemental report the

commissioner found this capital to be $266,420.58, as ascertained by the accountants employed by the commissioner. To this sum is to be added $10,000 omitted by mistake in the valuation of the real estate, making a total partners' capital of $276,420.58. Defendant's third of this sum is $92,140.19.

This conclusion makes it unnecessary to consider the alternative contention of the defendant that there should be credited back to her capital account amounts improperly charged to her or credited to the plaintiff on the partnership books in a total sum of $42,007.62, two of which items were allowed by the court as above stated.

The decree of the trial court is accordingly reversed with respect to the defendant's share in the partnership capital, which is now adjudged to be $92,140.19, with interest as provided for in the order of June 16, 1958, and subject to the credits as set out in the decree of September 25, 1959, appealed from.

The cause is remanded to the trial court to complete the settlement of the partnership on the basis here decreed, and the defendant shall recover her costs.

*Reversed and remanded.*