## CIRCUIT COURT OF LOUDOUN COUNTY

Walter C. Jacob

v.

First & Merchants National Bank

Case No. (Law) 7694

By JUDGE HENRY H. WHITING

December 19, 1984

This matter comes on before the Court on *pro se* exceptions filed by one of two debtors whose real property was sold by the trustee under a third deed of trust on October 22, 1982.

At the request of the exceptant, Mr. Jacob, the Commissioner of Accounts furnished him with a copy of the trustee's accounting of sale, and by his letter dated March 15, 1983, Mr. Jacob filed an objection to the account:

> on the grounds that the property sold for substantially more than set forth in the accounting ($2,637.09), to wit: $41,000.00 subject to all prior encumbrances.
>
> Before the bidding began, it was announced that the sale would be subject to the two prior deeds of trust, and the property was eventually sold to First & Merchants National Bank for the sum of $41,000.00. Later that day, the enclosed deed was recorded in Deed Book 816,

2

at Page 1376, which plainly recites the considera-
tion to be for the sum of $41,000.00.

I would respectfully request that you dis-
approve the account and require the Trustee
to complete the accounting as originally recited
in the deed reflecting a consideration of
$41,000.00.

Please advise should you determine it ne-
cessary to conduct a hearing regarding this
matter.

The Commissioner notified Mr. Jacob and the attorney
for the trustee that he had set the matter for hearing
on the account on November 9, 1983, and apparently by
agreement, it was continued and a hearing held on the
afternoon of December 8, 1983, at which time both parties
presented evidence reflected in a transcript of 133 pages.
Thereafter, each party submitted memoranda, and on April
6, 1984, the Commissioner reported to the Court that upon
"the principal controversy [of] whether the property was
sold for $41,000.00 subject to all prior liens or whether
it was sole for $41,000.00 which included the prior liens
(making the net purchase price $2,637.09); that based
on the totality of the evidence, your Commissioner finds
that the sale was for $41,000.00, and the proceeds should
be first applied to the two (2) existing prior deeds of
trust liens."

Mr. Jacob filed nine exceptions to this report,
summarized as follows:

(1) Exceptions 1 and 2 assert his principal contention
that the sale cried was a sale of the equity of redemption
with its value only being considered in the bids and
not the gross value of the entire property.

(2) Exceptions 3 and 4 maintain that the Commissioner
ignored the testimony of three of the independent witnesses
indicating that there was no announcement at the auction
sale of bidding to be based on the gross value of the
property.

(3) Exceptions 5 and 6 contend that the Commissioner
erred in interpreting the express provisions of paragraph
18 of the deed of trust and Virginia Code Section 55-59.4(3)
by finding that the "proceeds should be applied to the
two existing prior deeds of trust."

(4) Exception 7 charges the trustee with breaches of fiduciary duty and improper actions, setting forth sixteen different grounds having to do with events which occurred after the sale, except for the final three grounds, which set forth an estoppel to amend the deed and the auctioneer's certificate which originally reflected a $41,000.00 consideration for the conveyance.

(5) Exceptions 8 and 9 are merely arguments that: (a) Mr. Jacob's position is confirmed by the auctioneer's certificate, the deed and its recordation, all indicating a consideration of $41,000.00; and (b) the failure to disclose the original certificate of the auctioneer until the end of the hearing before the Commissioner showed an attempted cover-up and therefore, "Their evidence in its entirety should be set aside."

After reviewing the entire file and transcript, the Court held a telephone pre-trial conference with counsel, requesting memoranda of authorities on the issues, and both parties have submitted such memoranda. Mr. Jacob insists upon a jury trial, and the trustee presses for the entry of a decree confirming the report without any further evidence being taken, but if evidence is to be taken opposes a jury trial.

In the Court's opinion, the only real issue in this case is one of fact - whether the equity of redemption only was sold subject to the first two deeds of trust of about $38,000.00 at a price of $41,000.00, making the amount the purchaser would ultimately have to pay for the property around $79,000.00, or the property was sold with the understanding that the bidding encompassed the entire value of the property, and the purchaser would be required to pay the difference between the amounts ultimately determined to be due on the first two deeds

of trust and the amount of his bid.[1] The remaining issues involve questions of law.

The exceptions will be disposed of as listed in the above five categories.

(1) Exceptions 1 and 2 assert that the Commissioner erred in his factual conclusion that the property was sold for $2,637.09, subject to the prior deeds of trust of $38,362.91, making the total fee simple price of the property $41,000.00, rather he should have found that $41,000.00 was paid for the equity of redemption, making $79,362.91 the price of the fee simple interest in the property ($38,362.91 + $41,000.00).

The exceptant has not alleged that there is other evidence he could introduce on the subject. His allegations that discovery might produce additional evidence are insufficient to justify an additional hearing. He had an opportunity to do discovery before the commissioner and chose not to do so. If commissioner's findings are to be effective in our judicial system, they must be treated as hearings at the trial level, with exceptions as appeals based upon the record made before the Commissioner. *See Perron, Executor v. Payne*, 203 Va. 17, 23 (1961). While the Court does have the power under Virginia Code Section 26-33 to impanel a jury to "inquire into any matter which, in its opinion, should be ascertained in that way," no such necessity therefor has been shown in this case. The Court has examined the evidence returned by the Commissioner, reviewed his conclusions to see whether the testimony, though conflicting, is supported by testimony of competent and unimpeached witnesses. *Diebold & Sons' Stone Co. v. Tatteson*, 115 Va. 766, 80 S.E. 585 (1914). I believe *Diebold* is defining a witness who has been "impeached" as one where proof has been "adduc[ed] that [he] is unworthy of belief." Black's Law Dictionary, 5th ed.

---

[1] To quote Mr. Jacob at the Commissioner's hearing (Tr., pages 5-6): "What we really have here is a question os fact that we'd ask you to determine . . . . It's my position, I submit the evidence will show, that Mr. Traver [the trustee] made no statements whatsoever at the sale. He didn't announce what the bids were. He didn't make the supposed announcement that the bidding would be conducted as if the property were being sold free and clear so a purchaser would not be confused as to what he was bidding."

In the Court's opinion, while the testimony of some of the bank's witnesses has been attacked by the exceptant, they remain essentially unimpeached. No witness except the exceptant flatly contradicted the trustee's claim of his announcement of a sale at the net figure, after deducting the amount due upon the prior liens but bidding to be upon the entire value of the property. The most that can be said for the allegedly contradictory independent witnesses was that they "didn't remember," "didn't hear," or had no knowledge of his announcement, Dykes (pages 10-12, 19-20), Rust (pages 22, 23), in contrast to unequivocal testimony that such an announcement was made, Traver (page 99), Roush (pages 119-120), Crovo (page 83), and Dodson (page 75). The auctioneer remembers the trustee making an announcement but not its content (page 59). The exceptant's unequivocal claim that no such announcement was made (pages 37-38, 52-53) must be considered in the light of the testimony of all the other witnesses at the sale. The Commissioner was fully justified in rejecting it.

A recent statement of how a court should deal with a Commissioner's report is contained in *Hudson v. Clark*, 200 Va. 325, 329 (1958):

> It is well to note at the outset that it is established in Virginia that the conclusions of a Commissioner, where the evidence has been taken in his presence, should be sustained unless it plainly appears, upon a fair and full review, that the weight of the evidence is contrary to his findings. Although the trial court is given power of review over his findings, it cannot arbitrarily disturb the report, if it is supported by sufficient proof. Virginia Code Section 8-250 [now Section 8.01-610]. *Leckie v. Lynchburg Trust, Etc., Bank*, 191 Va. 360, 364, 60 S.E.2d 923; *Reese v. Reese*, 196 Va. 1028, 1036, 1037, 87 S.E.2d 133; 16 M.J., *References and Commissioners*, Section 33, pages 29, 30, 31, and numerous cases cited.

*See also Strauss v. Princess Anne Marina*, 209 Va. 217 (1968); *Hill v. Hill*, 227 Va. 569 (1984).

The Court feels that the Commissioner's finding was amply supported by the evidence because:

(a) The bank's witnesses were unequivocal in their claim that the trustee did announce the sale in the manner contended and the exceptant's witnesses' uncertainty.

(b) The evidence as to value demonstrates that the property was worth between $51,000.00 to $56,000.00, if sold privately with financing provided by the seller (pages 54 and 84) and around $40,000.00 as evidenced by the bids at this auction (pages 23, 82). Although the other bidder, Mr. Rust, appeared as a witness for the exceptant, he testified that he believed he was bidding on the property at a gross price of $40,000.00 (page 23). There is not a scintilla of evidence to justify a contention that this property was worth around $79,000.00 at public auction for cash with only two bidders, almost 42% more than $56,000.00 and 25% more than Mr. Jacob's claim of "low to mid 60's" value (page 54) (despite his willingness to sell at private sale *and finance* at $56,000.00 a short time before).

Apart from a clear demonstration that no one but Mr. Jacob thought the property was being sold for $79,362.00, the offer to contract, reflected in the bid, Section 29 Williston on Contracts (3d ed.), Volume 1, page 76, was one too good to be true and any acceptance would probably be unenforceable. Section 94 Williston, Volume 1, page 343. I believe this rule is based upon the inference of an obvious mistake because of the grossly excessive price, and the other party should not be permitted to take advantage of it.

(2) Exceptions 3 and 4 contend that the Commissioner ignored the testimony of Rust, Dykes, and the auctioneer, impartial witnesses, who "testified that no special announcements were made regarding the bidding (gross or net bids)." They did not so testify; as pointed out above, they said they "didn't remember, didn't hear, or had no knowledge" of such an announcement. The Commissioner obviously felt these uncertain statements could not prevail in the face of such positive statements to the contrary by other witnesses, even though interested, and the clear evidence of the property's value much closer to the lower figure contended.

(3) Exceptions 5 and 6 maintain that the express provisions of paragraph 18 of the deed of trust and Section 55-59.4(3) of the Virginia Code preclude a sale in the manner the bank contends.

Exceptant cites and quotes from *Seward v. New York Life Insurance Company*, 154 Va. 154 (1930), in support of the proposition that trustees under subordinate trusts have no authority to apply any portion of the proceeds of sale to the payment of a prior deed of trust debt. The cite is inapposite:

> we are not here concerned either with the right and authority of the trustees to have so offered the property for sale or what would be the rights of the parties had it been so offered for sale and purchased by Seward. *Id.*, at 162.

The defendants do not contest the principle asserted by Mr. Jacob but contend that the trustees do have the right to control the *mode* of sale, and they exercised that discretion in this case by having the property exposed for sale and the bids submitted as if the property itself was being sold free of all deeds of trust.[2]

*Seward* merely used the principal of law relied upon by the exceptant in support of its conclusion that a sale under a subordinate trust did not result in the purchaser assuming a first deed of trust, as was contended by the first deed of trust holder in his action against the purchaser at the foreclosure sale for a deficiency arising out of the later foreclosure of the first trust.

*Seward* discussed the three possible constructions of the foreclosure sale of a second deed of trust under which the deed recited a consideration of $10,000.00, $1,500.00 of which was paid in cash and $8,500.00 paid by the purchaser's assumption of the prior deed of trust.

(1) The purchaser did assume the prior trust and therefore owed the prior lienholder the sum of $8,500.00.

---

[2] To the extent that an inference might be drawn that the Commissioner ordered the balance applied to the payment of the prior liens, that would, of course, be incorrect under the Seward holding. I believe he only intended to clarify his holding that the fee simple value was used as the method of bidding.

The mere recital of the assumption in the deed, without any prior notice of that in the advertisements of sale, was held insufficient to bind the purchaser to assume payment of that deed of trust.

(2) The purchaser agreed to pay $10,000.00 for the equity of redemption. If so, the excess over the amount due on the second trust was payable to the second deed of trust debtor. It was in that context that the remarks were made indicating no authority to disburse the excess to a prior lien creditor. This theory was also rejected because:

> It may be inferred from the record [that] the value at public auction of the equity of redemption in a property for the whole state [was no more than] $8,500 [and] if Seward did bid $10,000 for the equity of redemption in the property . . . he was purchasing the property on the basis of the whole estate therein being then worth $18,500.00. *Id.*, at 167.

(3) The equity of redemption was sold for $1,500.00 and that was all the purchaser was required to pay; he could not be held for the deficiency under the first trust, although he did lose the land. The trustees had no power or authority to require him to assume payment of the first trust, and there would have been no consideration therefor even if he had expressly agreed to assume it. This was the situation the appellate court felt to be controlling.

Thus *Seward* seems to support the bank's position that the Courts should consider the value of the property as one of the circumstances in a dispute as to what the sale price was in a situation similar to the one in this case.

Counsel's reliance upon *Schmidt & Wilson, Inc. v. Carneal*, 164 Va. 412, 180 S.E. 325 (1935), is misplaced. That case cited and quoted the same quotation referred to above from *Seward*. However, the case only involved the amount a trustee under a subordinate trust could charge as commissions in the foreclosure of the subordinate trust. The trustee sought to charge a commission on the full value of the property when he was only authorized

to sell the equity of redemption, and he was therefore limited to a percentage on that figure but not the amount received when the trustee sold the entire property purportedly free of the prior liens, disbursing the balance to the prior lienholder and seeking a commission on the entire balance over the objection of the debtor. The Court held that the trustee had no power to foreclose the prior trusts without the consent of the debtor and therefore was not entitled to a commission on the entire amount.

As the exceptant noted on page 12 of his memorandum of October 22, 1984, the bank cited no authority for its proposition on page 8 of its October 11, 1984, memorandum that "a trustee has the discretion to establish any reasonable method or mechanism for accepting bids." Independent research discloses such authority in Section 190.6, Scott on Trusts (3d ed.); Section 475, *Trusts*, 76 Am. Jur. 2d 692. Contrary to the exceptant's assertion on page 12, the Court finds nothing unorthodox in selling property in this fashion at a foreclosure sale under a subordinate trust. Frequently, it is difficult to ascertain the exact balances on the prior liens as of the date of sale, and it seems entirely logical and proper to advise purchasers that they should bid on the fee simple value but all prior liens, taxes, utility, and other assessments will be prorated and deducted from the bid to determine the net amount paid for the equity of redemption. This encourages bidders by insuring them against unknown balances and charges difficult for them to resolve at the time of sale.[3]

All the deed of trust and statute forbid is that the trustee *collect* and *disburse* funds from the sale under a subordinate trust in payment of the prior liens.

(4) The breaches of trust and other improper actions create an estoppel to amend the auctioneer's certificate and deed (Exception 7).

I do not believe that any of the alleged activities of the trustee constituting supposed violations of fiduciary duties could change an agreed sale price If there were any such breaches, they were not presented before the

---

[3] While no part of this decision because not in evidence, the Court notes that it saw and conducted a number of foreclosure sales of subordinate trusts in exactly that fashion during a thirty-year period as a practicing attorney.

commissioner and probably could not have been considered by him since he was only charged with the responsibility of approving the account as stated. Likewise in the appeal from the commissioner's findings the breach of those duties cannot properly be presented before this court; even if they could be properly presented, the court is unable to see how that could affect the ultimate issue. If the trustees have acted improperly, the debtor and beneficiaries have other remedies but certainly not to penalize the purchaser at the sale, even though it was lien creditor of the trust being foreclosed. The court does recognize that what the trustees did after the sale might be material to indicate what the facts were at the time of sale and has considered all of the matters set forth in the exceptions but only for that purpose.

The Commissioner was convinced, after seeing and hearing the witnesses, that an honest and obvious mistake had been made in the auctioneer's certificate and the original deed and the record should be corrected. Although the trustee and his agents might have been more diligent in responding promptly and accurately as to what did happen, I believe the Commissioner correctly failed to find any bad faith.

The bank bought the property honestly believing the bid for the total value to be $41,000.00, with all prior liens deducted (though not necessarily paid or assumed).

Finally, Mr. Jacob has not established a change of position or reliance, the *sine qua non* for the creation of an estoppel. *State Farm Mutual Auto Insurance Co. v. Pederson*, 185 Va. 941, 953 (1947); *cf.*, *Anderson v. Phleger, Trustee, et al.*, 93 Va. 415 (1896), where there was a reliance.

(5) exceptions 8 and 9 are merely arguments on the interpretation of the evidence and, in part, restatements of other exceptions. They are without merit for reasons already stated.

The Court observed that it not only finds the Commissioner's findings to be justified under the evidence; it would have reversed any contrary finding, believing that the evidence clearly and convincingly demonstrates that a clerical error had been made which would have resulted in a windfall to the exceptant if not corrected.

All exceptions should be overruled and the Commissioner's report confirmed.

March 4, 1985

The Commissioner and this Court have previously held the evidence established that the trustee of a deed of trust did announce that the property securing a debt was being sold at the foreclosure sale with the understanding that the bidding encompassed the entire value of the property and the purchaser would pay the difference between the bid and the prior liens, taking the property subject to the liens. The ,plaintiff, a lawyer who was one of the debtors whose property was being sold, claimed no such announcement was made, thus raising the bid from $41,000.00 to $79,000.00. After this Court had announced its decision on December 19, 1984, he filed a motion to reopen on December 31, 1984, claiming after-discovered evidence obtained in a reception held November 27, 1984, at which one of the several witnesses who had testified on December 8, 1983, that such an announcement had been made volunteered while intoxicated (disclosed by the plaintiff in a later letter of January 14, 1985) that he had perjured himself because of threats by his employer, who was the purchaser at the sale. This plaintiff's affidavit also indicates that his "recanting" witness will deny the "cocktail" confession if called as a witness.

The petition for rehearing based on after-discovered evidence, affidavits, and memoranda in support thereof and in opposition have been carefully considered, and it is denied for the following reasons:

(1) It is insufficient as a matter of law, even if accepted as true.

(a) It is merely collateral to impeach the testimony of a witness and not as direct evidence binding the principal. *Bankers Insurance Co. v. Henderson*, 196 Va. 195, 208 (1954) (expressly so holding as to after-the-fact statements made by an insurance agent); *cf.*, *Cab Association v. LaTouche*, 197 Va. 367 (1955) (a *party* admitted giving conflicting statements affecting the quantum of damages in a personal injury case), and thus not within the third of the four requirements for a new trial because of after-discovered evidence. *LaTouche*

at 376; *Burks Pleading and Practice* (4th ed.), Section 324, page 602.

Mr. Jacob's assertion that Mr. Dodson's "confession" of perjury was an admission against interest of his employer and not merely impeaching evidence is without merit. Mr. Dodson is not a *party* to these proceedings, nor has he been shown to be an agent *authorized* to speak for the bank at this cocktail party or on any other occasion.

Employment does not imply an agency to make admissions binding upon the principal, indeed adverse testimony of the principal executive officer of a corporation has not been treated as an admission of the corporation. *Fellowship Foundation, Inc. v. Paul*, 86 So. 2d 808, 809 (Fla. 1956); *Saltmount Oil Corp. v Imperial Crown Corp.*, 98 S.W.2d 418 (Tex. App. 1936). If the agent is in the business of collecting evidence for the principal, evidence of alleged subordination of witnesses or suppression of evidence is admissible. Section 626 *Evidence*, 29 Am. Jur. 2d 680; Annotation "Admissibility and Effect, on Issue of Party's Credibility or Merits of His Case, of Evidence of Attempting to Intimidate or Influence Witness in Civil Action," 38 A.L.R. 595, 4 A.L.R. 4th 839. Both are far from a claimed confession of perjury by a subordinate employee, which would concededly be denied by him under oath.

> The general rule is that if, eliminating the perjured evidence, there is still other evidence sufficient to support the verdict a new trial will not be granted. (Citing a case.) Application for a new trial is addressed to the sound discretion of the trial court based on the ground that there has not been a fair trial on the merits. (Then lists the four essentials from *Burks Pleading and Practice*.) *Id.*, at 597.

(b) It is merely corroborative. Mr. Dodson was only one of several witnesses contradicting Mr. Jacob's version.

In *Leigh v. Commonwealth*, 192 Va. 583 (1951), a new trial was denied in a murder case where after-discovered witnesses' affidavits indicated they had heard the deceased's daughter say she was the cause of the murder

but she could not tell the truth about it. She had denied making these statements when asked about them at the trial, but there was other evidence sufficient to support the verdict even if her testimony had been eliminated. The Court pointed out that the statements were for impeachment purposes and not substantive evidence on the merits of the case.

(2) The allegations in the affidavits convince the Court that the new evidence, if offered, would not have changed the Commissioner's (or its) ruling. *Zimmerman v. Commonwealth*, 167 Va. 578, 586 (1937), because:

(a) The alleged source of information for the affidavit (Mr. Dodson) denies the statements attributed to him by Mr. Jacob and there is *no* corroboration of a most serious charge of perjury in this case.

(b) The Court's previous opinion letter, on pages 8-9, has already indicated that, "The Commissioner's findings [were] justified under the evidence; it would have reversed any contrary finding, believing the evidence clearly and convincingly demonstrates that a clerical error had been made . . . ." If either fact finder heard Mr. Jacob's claim and Mr. Dodson's denial thereof (leaving aside the other witnesses' equally strong denials of any such plan to procure perjured testimony at a judicial hearing), I believe Mr. Jacob's testimony would be clearly insufficient to "cast grave doubt as to the correctness of the Commissioner's [and the Court's] finding." *LaTouche* at 376-377. In all candor, I must say that Mr. Jacob could only prevail in his present assertions if this Court found that one witness, Dodson, deliberately lied under oath, two other witnesses, Crovo and the trustee, Traver, required the false testimony of the bank employee Dodson and three members of the Virginia Bar (Traver, Prichard, and Rousch) allowed him to testify false in violation of DR 7-102 (4, 6, and 7) (and now DR 7-102 (5) by their present affidavits). If fraud must be proved by clear and convincing evidence, these charges ought at least to meet that standard. In charity I will only say that they do not.

(c) The account Mr. Jacob himself gives of this "cocktail hour" conversation, his failure, as a lawyer and officer of the Court, to report it immediately to the proper authorities (DR 1-103) at the least "fails

14

to show that [Dodson's] testimony was . . . untrue."
*LaTouche* at 377.[4]

No objection having been made to the form of the final decree sent counsel some time ago, I have added a paragraph overruling of the motion for anew trial and entered it on this date.

---

[4] If the proffered evidence had established an egregious case of perjury, even though of an agent without authority, or of a mere third party witness, obviously justice would require a new trial. Powell v. Commonwealth, 133 Va. 741 (1922).